**Sandra STAPLETON; William Stapleton, Appellants,**

v.

**ASHLAND OIL, INC., a Kentucky corporation, Appellee.**

No. 85-1260.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 13, 1985.

Decided Oct. 3, 1985.

H.F. Salsbery, Jr., Parkersburg, W.Va. (Barbara H. Fleisher, Preiser & Wilson, Charleston, W.Va., on brief), for appellants.

Paul A. Billups, Huntington, W.Va. (Michael J. Farrell, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, W.Va., on brief), for appellee.

Before MURNAGHAN and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

MURNAGHAN, Circuit Judge:

Principles of law pushed to their extremes frequently find themselves at war with one another. Their mutual accommodation, so that they may live, if in tension, nevertheless, at peace with one another, becomes the responsibility of the courts. The principles underlying the workmen's compensation statutes of West Virginia are simply that a) an employee injured in the course of his or her employment should receive compensation irrespective of fault, whether the fault of the employer or the fault of the employee, and b) the amount of the employer's liability should be determined in accordance with statutory scales and that, in return for such benefits, the employee no longer has a common law tort claim against the employer. *See Smith v. ACF Industries, Inc.,* 687 F.2d 40 (4th Cir.1982); *Marshall v. Sisters of the Pallotine Missionary Society,* 703 F.2d 92 (4th Cir.1983).

It was recognized, of course, by West Virginia legislators that there might be employers so disregardful of employee well-being that they might, with deliberate intent, bring about injury or death of the employee. To remove the possibility of an obvious conflict in principle between the immunity of an employer from tort liability and the rule that one should not be insulated from liability for intentional infliction of harm, West Virginia Code § 23-4-2 was enacted preserving to employees the common law right to sue for tort: "[i]f injury or death result to an [1] employee from the deliberate intention of his employer to produce such injury or death...." That provision necessarily, however, created in turn a need to reconcile the rule generally banning tort claims against employers with the right to sue for tort in cases of deliberately imposed injuries.

---

1. Currently, the statute refers to "any" employee.

It was recognized, of course, that demonstration of a positive desire on the employer's part that the employee be injured or killed was most improbable and "deliberate intent" in the statute has been construed to include "wilful, wanton and reckless misconduct." A condition known to the employer to exist which poses a high degree of risk and strong probability of physical harm to the employee may be deemed one deliberately intended where the employer permits the condition to exist, realizing that a high degree of risk and a strong physical probability of harm to its workers is posed by such condition. *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 705–06, 246 S.E.2d 907, 913–14 (1978). Nevertheless, those words of definition must be read bearing in mind that they explicate the meaning of deliberate intent. Injury or death, unless deliberately intentional, does not trigger the *Mandolidis* exception.

It is elementary, of course, that intent encompasses not only what an actor means should happen, but also extends to occurrences the actor realizes will happen as a consequence of his conduct, even though the occurrences are not desired. It is through resort to that definitional structure that the *Mandolidis* ascription of meaning to the term "deliberate intention" has evolved.[2]

In the instant case, Sandra Stapleton was an employee of Ashland Oil, Inc. at its convenience store located in Cora, Logan County, West Virginia. At about 2:00 o'clock in the early morning on December 21, 1982, she was approached by two men outside the store where she was spraying the driveway with a water hose. They forced her inside the store. Using force, they demanded money and required Stapleton, along with a fellow employee, to disrobe. Thereafter, the intruders made Stapleton dress and abducted her in their automobile. They drove to a nearby hillside where rape and other sexual indignities took place.

Prior to the incident, over a three month period from October to December 1982 three telephone calls had been made to the convenience store concerning asserted prospective robberies and a bomb threat. Stapleton reported the calls to her superior, the store manager. Without success, Stapleton called for additional security at the convenience store.

Prior to December 21, 1982, there had been incidents of armed robbery and a breaking and entering in Logan County in the vicinity of the convenience store. However, the convenience store had suffered no armed robberies, breaking and entering or sexual assaults. There had been no reported rapes in the Logan County area for a substantial period of time preceding the events of December 21, 1982. In the personal injury tort action filed on April 6, 1984, Stapleton claimed deliberate intention on the part of Ashland Oil to produce her injury. Her husband joined as a plaintiff seeking damages for loss of consortium.

In the circumstances generally of this country today, and particularly those of Logan County, West Virginia, the curse of robbery, and, to a lesser extent, of rape, is an ever-present danger. However, the danger is present in varying degrees. The country operates on the principle that the state provides protection against marauders and, in the absence of repeated assaults on a particular location, we are unable to find in the record evidence substantial enough to ground a recovery on a deliberate intent of Ashland Oil to produce the injury suffered by Stapleton.

With respect to robbery itself, while some robberies had previously occurred in Logan County,[3] it is doubtless true that, with rare exceptions, every county in the United States has had to suffer such crimes in a comparable period of time. The

---

**2.** *See Mandolidis v. Elkins Industries, Inc., supra,* 161 W.Va. at 706 n. 9, 246 S.E.2d at 914 n. 9.

**3.** The three telephone threats of a bomb explosion or of prospective robberies at the convenience store of Ashland Oil were neither a) part of a persistent pattern nor b) possessed of other indicia that they actually would be carried out. Prior to December 21, 1982, no threat had ever actually passed beyond the talking stage.

anonymous telephonic, often empty, threat is another regrettable by-product of industrialization. It is by no means confined to Logan County. The convenience store of the defendant had never, so far as the record discloses, experienced any armed robbery or breaking and entering.

With respect to the rape, probability that the Cora convenience store would be the scene of such an affront to Stapleton was remote to the point of total non-existence. There had been no reports of any rapes occurring in Logan County for a substantial period of time preceding the attack on Stapleton, and, of course, no rape had been reported as occurring at the defendant's convenience store.[4]

Accordingly, we find the decision of the United States district judge who considered the case that the defendant was entitled to summary judgment was correct. There simply was not a basis for holding that Stapleton's injury resulted from the deliberate intention (including wilful, wanton or reckless misconduct) of her employer. Counsel for the Stapletons overlook, in citing such cases as *Guffie v. Erie Strayer Co.*, 350 F.2d 378 (3d Cir.1965) for the proposition that the exact crime need not be foreseen, that the action in that case was one requiring only proof of negligence to ground liability, while we deal with a claim which, to succeed, must establish deliberate intention. Not even gross negligence will suffice. *Smith v. ACF Industries, supra,* at 43.

Similarly, there is no resemblance between the instant case and the case of *Mooney v. Eastern Associated Coal Corp.*, —— W.Va. ——, 326 S.E.2d 427 (1984), where it was held to be a jury question whether or not there was deliberate intention to bring about the death of an employee where the workplace was in extremely dangerous and hazardous condition, a similar

roof fall had occurred a few days before the one which killed the employee, and a number of federal mine safety standards violations had occurred in the workplace.[5] Nothing in the record in the instant case warrants a description of the convenience store as being in extremely dangerous and hazardous condition; there was no antecedent occurrence at the workplace like the one resulting in injury to the employee; and no violations of safety standards existed.

We are not prepared to hold that the injuries to Stapleton were consequences substantially certain to result from the way the convenience shop was operated. Accordingly, the decision of the district court is

AFFIRMED.

---

**4.** The injuries claimed by Stapleton stemmed from the rape, rather than the robbery. It may well be that, in determining whether there was deliberate intent (or its counterparts of wilful, wanton or reckless misconduct), only the likelihood of rape should be considered by us. However, inasmuch as the foreseeability of robbery was not substantial enough to allow the case to proceed, *a fortiori*, contentions growing out of the rape were not.

**5.** *See also Mandolidis, supra,* 161 W.Va. at 707, 246 S.E.2d at 915.