816 F.2d 674
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Barbara J. WALLS, Administratrix of the Estate of Timothy J.
Walls, deceased, Plaintiff-Appellant,
v.
UNITED STATES STEEL MINING COMPANY, INC., a corporation, a
subsidiary of United States Steel Corporation,
Jeffery Mining Machinery, a Division of
Dresser Industries, Inc.,
Defendant-Appellees.
 No. 86-1122.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 7, 1987.
Decided April 7, 1987.
 
 1
 Before WILKINSON, Circuit Judge, HAYNSWORTH, Senior Circuit Judge, and SENTELLE, United States District Judge for the Western District of North Carolina, sitting by designation.
 
 
 2
 Richard Eichert Hardison, Sr. (Harry G. Camper, Jr.; H. Truman Chafin, on brief), for appellant.
 
 
 3
 David L. Wyant (Love, Wise & Woodroe, on brief), for appellee.
 
 SENTELLE, District Judge:
 
 4
 The plaintiff brought this action in West Virginia state court seeking damages for the wrongful death of her husband during the course of his employment by defendant United States Steel Mining Company, Inc. After removal, the district court granted defendant's motion for summary judgment on the basis that West Virginia's workers compensation statute provided plaintiff's exclusive remedy. Plaintiff moved for rehearing, and after the denial of that motion, appealed on the basis that her claim falls within an exception to the exclusivity of the West Virginia statute. Finding this argument not to be well taken, we affirm the district court's ruling.
 
 
 5
 The employees of the defendant are subject to the West Virginia Workmen's Compensation Act which generally gives immunity from tort actions brought by employees for injuries, including death, sustained in the workplace. West Virginia Code, Chapter 23, Article 4, Section 2 read, at the pertinent time:
 
 
 6
 "If injury or death results to any employee from the deliberate intention of his employer to produce such injury or death, the employee, the widow, child, or dependent of the employee shall have the privilege to take under this Chapter, and shall also have a cause of action against the employer as if this Chapter had not been enacted, for any excessive damages over the amount receivable under this Chapter."[1]
 
 
 7
 In Mandolidis v. Elkins Industries, Inc., 246 S.E.2d 907 (W.V.1978), this statutory exception to employer's immunity was construed to include "wilful, wanton, or reckless misconduct" causing injury or death. Mandolidis emphasizes that this is a different standard from negligence however gross the negligent conduct might be. This exception is to cover conduct intentionally undertaken by the employer with knowledge that it created a high risk of physical harm to the employees. Smith v. ACF Industries, Inc., 687 F.2d 40 at 42 (4th Cir.1982). Therefore, the injury or death, unless the product of wilful, wanton, or reckless misconduct, does not trigger the Mandolidis exception. Stapleton v. Ashland Oil, Inc., 774 F.2d 622 (4th Cir.1985).
 
 
 8
 The facts in this case evidence no more than negligence. Walls was killed while operating a locomotive removing rock from an underground mine. He and a helper attached his locomotive to 22 cars of rock and attached another locomotive to the rear of this line of cars to help push the rock out of the mine. The helper was riding in the rear locomotive.
 
 
 9
 Another employee, Betty Hamm, was operating a third locomotive. She had "back-poled" or reversed her motor and caused the electric pole on her locomotive to break. This left her locomotive and radio inoperable. She contacted the dispatcher who directed Eddie Cable to assist Hamm by attaching his 8-ton car to her 20-ton car to push her out of the area. When this was accomplished, Cable requested haulageway to "mouth of house" which was the next checkpoint. When Cable arrived at "mouth of house" pushing Hamm's locomotive, he requested haulageway to "the wall", the next checkpoint. Arriving at "the wall", Cable requested haulageway up the slope to portal and out of the mine. Haulageway was given and Cable proceeded pushing Hamm toward the portal. McKinney, a maintenance foreman, was following Cable in a jeep.
 
 
 10
 Halfway up the slope, Cable's car stalled. McKinney came up behind Cable and attempted unsuccessfully to push Cable out of the mine. The dispatcher was not informed of these cars being stalled along the haulageway.
 
 
 11
 Around the same time, the locomotive being driven by Walls was given clearance to "mouth of house" and then given clearance to the road outside. As Walls continued, he saw the vehicles in his path. Walls radioed to his back locomotive for his helper to hit the brakes. The locomotive could not stop in time and collided with the jeep wedging it under Cable's car, forcing Hamm's locomotive to rise over the front of Wall's locomotive causing a fatal head injury.
 
 
 12
 Plaintiff asserts that the employer's actions meet the intentional standard under Mandolidis in that the events illustrate subjective knowledge of a danger or risk to plaintiff that the employer wilfully and recklessly allowed to occur. The court found that there was no evidence to show any such knowledge on the part of the employer and entered summary judgment for the defendant.
 
 
 13
 We hold that the trial court properly construed the Mandolidis exception. As this Court has previously held:
 
 
 14
 "It is clear that the West Virginia Supreme Court of Appeals did not intend to open its common law courts to every employee suffering injuries because of an unsafe workplace or condition created or maintained by a negligent or grossly negligent employer." Smith v. ACF Industries, Inc., supra.
 
 
 15
 In the case of Nedly v. Consolidation Coal Co., 578 F.Supp 1528 (N.D.W.V.1984), the court outlined nine factors to be considered in assessing the existence of liability in a Mandolidis -type action. These factors included:
 
 
 16
 (1) Whether the complained of condition had resulted in a previous death or injury;
 
 
 17
 (2) Whether the condition had been recognized as a violation of state or federal law or accepted industry practice;
 
 
 18
 (3) The nature or extent of any training or indoctrination given to the employee by the employer relative to the condition giving rise to the injury;
 
 
 19
 (4) Knowledge by the employer that the injury causing condition had a propensity to injure;
 
 
 20
 (5) The employer's attitude in response to voiced complaints of employees to injurious conditions;
 
 
 21
 (6) The source or frequency of concerns calling attention to the injury producing condition;
 
 
 22
 (7) The length of time which elapsed between the time the condition became apparent until the date of the injury and what likelihood existed that the existing condition would produce serious injury;
 
 
 23
 (8) The reason the employer allowed the condition to exist; and,
 
 
 24
 (9) Assuming some hazard was created by the lack of certain safety precaution, what, if any, safety features were in place or practiced. Id. at 1532.
 
 
 25
 In attempting to meet those standards, plaintiff asserts that grievances had been filed concerning the lack of communication in the mine; that there was not a company policy preventing two or more vehicles from being between two checkpoints at the same time; and that the number of vehicles moving inside the mine had been substantially increased. Plaintiff could not come forward with any of the alleged grievances or other evidence that there had been any complaint pertaining to the failure or lack of adequate communication in the area of the mine where plaintiff's decedent was fatally injured. The only evidenced complaints of problems with the radio communications system were general in nature and did not specifically pertain to this slope area. Nor has plaintiff produced any other evidence to bring this case within Nedly or Mandolidis.
 
 
 26
 Indeed, the evidence indicates that the acts, omissions, and conduct of the employees of defendant which cumulatively caused the fatal accident, were in violation of company policy in at least three separate particulars. First, the operators of the stalled vehicles on the slope of the haulageway failed to contact the dispatcher when their vehicles became stalled in the slope; second, the dispatcher allowed the rock trip being lead by plaintiff's decedent to enter the slope area leading out of the mine prior to his observing whether the vehicles on the bridge outside had passed the derail halfway up the slope; and third, the plaintiff's decedent failed to have his motor and rock trip under control at the time of the accident. It is company policy that the operator of a motor in a mine must have it under control and be able to meet all contingencies on the road including being able to stop whenever an emergency arises.
 
 
 27
 Not only was there no evidence that employees had complained about unsafe conditions in the mine that could have lead to Walls' death, but also, the evidence is that defendant conducted weekly safety meetings where employees were given instructions as to proper procedures for operating vehicles in the haulageways and on proper procedures for communications with the dispatcher. In sum, the evidence revealed and the district court found that plaintiff's decedent's death was an isolated incident which resulted from a previously unknown and unexpected chain of events. While certain precautions might have been taken to prevent this accident, this alone is insufficient to support a finding of deliberate intent, so as to come within the exception to worker's compensation immunity. We, therefore, find no error in the district court's grant of summary judgment.
 
 
 28
 Plaintiff also asserts error in the district court's basing its ruling on a finding that the defendant had no knowledge or appreciation that its employees faced a high degree of risk or physical harm due to the "conditions" which resulted in plaintiff's decedent's fatal injury. Plaintiff asserts that this finding and reasoning is a misapplication of the law set forth in Mandolidis by substituting the word "condition" for "conduct".
 
 
 29
 The argument is not well taken in light of Stapleton v. Ashland Oil, Inc., supra, and Mandolidis, which hold:
 
 
 30
 "A condition known to the employer to exist which poses a high degree of risk and strong probability of physical harm to the employee may be deemed one deliberately intended where the employer permits the condition to exist, realizing that a high degree of risk and a strong physical probability of harm to its workers is posed by such a condition." (Emphasis added.) Stapleton at 623.
 
 
 31
 It is clear that the two words are used synonymously. Any attempt to distinguish the two for the purpose of this appeal and for Mandolidis -type cases in general is fruitless. Therefore, we again conclude that the decision below was correct.
 
 
 32
 Plaintiff further asserts that the district court erred in denying the motion for reconsideration of the motion for summary judgment. We find no merit in this contention.
 
 
 33
 The plaintiff failed to show any evidence not available to her at the original motion. Neither did she show the court any other reason that would compel the court to conclude that a rehearing was necessary to correct some manifest error of law or fact. Engelhard Industries, Inc. v. Research Instrumental Corp., 324 F.2d 347 (9th Cir.1963). Therefore, the decision below is affirmed.
 
 
 34
 AFFIRMED.
 
 
 35
 FN1 This claim arose prior to a 1984 Amendment to Chapter 23-4-2 and is addressed under the prior statutory language quoted here.