493 S.E.2d 887

Thelma Lea BLAKE and Jerry Lane
Blake, Her Husband,
Appellants,

v.

JOHN SKIDMORE TRUCK STOP, INC.,
A West Virginia Corporation,
Appellee.

No. 23400.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 29, 1997.

Decided July 17, 1997.

R. Edison Hill, Philip Strauss, Hill, Peterson, Carper, Bee & Deitzler, and Thomas G. Wilson, Charleston, for Appellants.

Mary H. Sangers, James C. Stebbins, Huddleston, Bolen, Beatty, Porter & Copen, Charleston, for Appellee.

WORKMAN, Chief Justice:

Thelma L. Blake and her husband, Jerry L. Blake, the plaintiffs below and Appellants herein (hereinafter Appellants), appeal the September 18, 1995, order of the Circuit Court of Braxton County, directing a verdict in favor of John Skidmore Truck Stop, Inc., a West Virginia Corporation, the defendant below and Appellee herein (hereinafter Appellee). On appeal, Appellants argue the trial court erred by ruling that (1) injuries resulting from third party criminal acts, as a matter of law, cannot give rise to a claim under the "deliberate intention" exception contained within West Virginia Code § 23–4–2 (1985) [1] of our Workers' Compensation Act [2]; and (2) Appellants failed in their case-in-chief to produce sufficient evidence to establish a prima facie right to recovery, preventing entry of a directed verdict against them. Upon

---

**1.** West Virginia Code § 23–4–2 provides, in part:

(b) If injury or death result to any employee from the *deliberate intention* of his employer to produce such injury or death, the employee, the widow, widower, child or dependent of the employee shall have the privilege to take under this chapter, and shall also have [a] cause of action against the employer, as if this chapter had not been enacted, for any excess of damages over the amount received or receivable under this chapter.

*Id.* (emphasis added). Amendments were made to West Virginia Code § 23–4–2 in 1991 and 1994; however, these amendments do not impact this decision. *See* W.Va.Code § 23–4–2 (Supp.1991 and 1994).

**2.** *See* W.Va.Code §§ 23–1–1 to 23–6–1 (1994 & Supp.).

review, we reverse the final order of the trial court and remand this case for further proceedings consistent with this opinion.

## I.

## FACTS

In April 1989, Mrs. Blake began working as a cashier at the Party and Beverage Store (hereinafter the "Store"), which primarily sold beer, soft drinks, and snack foods to its customers.[3] The Store was owned and operated by Appellee and was located near an interchange off Interstate 79 in Flatwoods, West Virginia. For the convenience of its customers, the Store was equipped with garage doors at the front and back of the building, permitting drive-through purchases to be made. According to John Skidmore, the president and majority shareholder of Appellee, drive-through business accounted for approximately sixty to seventy percent of the Store's sales.

Appellee also owned a laundromat adjacent to the Store. Although Mrs. Blake worked at the Store by herself, she also was responsible for keeping the laundromat clean during her shift. Mrs. Blake testified that she would spend approximately five to fifteen minutes, every thirty minutes to an hour, doing her chores in the laundromat.[4] While she was in the laundromat, the Store was left open and unattended. Mrs. Blake testified that she was instructed to always keep the Store's garage doors open during business hours, but that she should keep the Store's cash register locked whenever she was away from it.

Near the end of the business day on March 4, 1990,[5] Mrs. Blake was returning from cleaning the laundromat and noticed a man she had never seen before in the Store. According to Mrs. Blake, the man purchased a soft drink and stood directly behind her when she used the cash register. Mrs. Blake testified that, because of the location of the cash register, there was nothing to prevent the man from seeing the day's receipts, approximately $230, when she opened the cash register drawer. After purchasing the soft drink, the man left the store, and Mrs. Blake locked the register, took the key, and returned to the laundromat.

Moments later, the same man re-entered the Store and called for Mrs. Blake's attention. After Mrs. Blake came back into the Store, the man handed her a one dollar bill to purchase a package of crackers. Once again, the man stood directly behind her as she opened the cash register drawer to get him his change. This time, however, as she opened the drawer, the man began brutally stabbing her with a knife. After stabbing her eight times, the knife broke so the man began beating her head against a wall. Mrs. Blake testified that she screamed and struggled to get away, but she ended up on the floor and decided to pretend she was dead.

After the man left, Mrs. Blake got up and staggered to a Pennzoil station to get help. John Conley, an employee at the Pennzoil station, drove Mrs. Blake to the Braxton Memorial Hospital.[6] From there, she was taken by helicopter to Charleston Area Medical Center, where she remained for eight days. In addition to her physical injuries and scarring, Mrs. Blake asserts she now suffers from post-traumatic stress syndrome.[7] Her assailant has never been arrested.·

Appellants filed suit against Appellee, generally alleging that Appellee intentionally and wilfully failed to provide any security in the Store and, as a direct and proximate cause of such lack of security, Mrs. Blake suffered substantial injuries. Both at the

---

3. Ms. Blake previously worked at the Store from 1982 to 1984. According to Appellee, the Store is no longer in business.

4. Mrs. Blake used a "back door" to get from the Store to the laundromat.

5. Mrs. Blake was completing a ten-hour shift, lasting from 10:00 a.m. to 8:00 p.m.

6. Mr. Conley estimated the Pennzoil station was approximately one hundred yards from the Store.

7. Mrs. Blake was two and one-half months pregnant at the time of the attack. Although the baby was born with some type of abnormality, Appellants' counsel told the trial court that no doctor ever diagnosed the problem as being related to the attack.

trial court level and on appeal, Appellants argue that their claim for damages is not barred by the immunity from suit protection afforded employers under the Workers' Compensation Act because Appellee acted with deliberate intention as defined by West Virginia Code § 23–4–2, for which an employer loses its immunity from suit protection. In addition, Appellants maintain they presented sufficient evidence at trial to prove Appellee acted with such deliberate intention and, therefore, the trial court erred when it directed a verdict against them at the close of their case-in-chief.

## II.

## DISCUSSION

This case presents two issues. The first issue is whether injuries resulting from the criminal acts of a third party can ever give rise to a claim under the deliberate intention exception of West Virginia Code § 23–4–2. If such a claim can be made, the second issue to be resolved is whether Appellants produced sufficient evidence in the present case to establish that Appellee acted with deliberate intention to defeat Appellee's motion for a directed verdict. After careful review of West Virginia Code § 23–4–2, we find an employee can state a deliberate intention cause of action when injured by the criminal acts of a third party so long as the employee can meet the requirements of the "deliberate intention" exception as set forth in the statute. In addition, upon review of the facts, we find Appellants produced sufficient evidence in their case-in-chief to prevent a directed verdict from being entered against them.

8. In full, West Virginia Code § 23–4–2(c)(2)(iii)(B) states that "[i]n cases alleging liability under the provisions of the preceding paragraph (ii):"

(B) Notwithstanding any other provision of law or rule to the contrary, and consistent with the legislative findings of intent to promote prompt judicial resolution of issues of immunity from litigation under this chapter, the court shall dismiss the action upon motion for summary judgment if it shall find, pursuant to Rule 56 of the Rules of Civil Procedure that one or more of the facts required to be proved by the

### A.

### *Standard of Review*

To the extent the issues in this case present purely a question of law, i.e., a statutory analysis, our review is de novo and plenary. *State v. Smith,* 198 W.Va. 702, 707, 482 S.E.2d 687, 692 (1996); *Farley v. Sartin,* 195 W.Va. 671, 673, 466 S.E.2d 522, 524 (1995). As to the directed verdict, however, West Virginia Code § 23–4–2(c)(2)(iii)(B) specifically provides that a court shall dismiss an action when, "after considering all the evidence and every inference legitimately and reasonably raised thereby most favorably to the plaintiff, the court shall determine that there is not sufficient evidence to find each and every one of the facts required to be proven" in West Virginia Code § 23–4–2(c)(2)(ii)(A)–(E). W.Va.Code § 23–4–2(c)(2)(iii)(B) [8]; *accord* Syl. Pt. 3, *Roberts v. Gale,* 149 W.Va. 166, 139 S.E.2d 272 (1964) (holding "[w]hen the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right of recovery, the trial court should direct a verdict in favor of the defendant"). Similarly, this Court repeatedly has said:

" ' "Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence." Syllabus, *Nichols v. Raleigh–Wyoming Coal Co.,* 112 W.Va. 85[, 163 S.E. 767 (1932) ].' Point 1, Syllabus, *Jenkins v. Chatterton,* 143 W.Va. 250[, 100 S.E.2d 808] (1957)."

Syl.Pt. 2, *Jividen v. Legg,* 161 W.Va. 769, 245 S.E.2d 835 (1978). Moreover, as to the stan-

provisions of subparagraphs (A) through (E) of the preceding paragraph (ii) do not exist, and the court shall dismiss the action upon a timely motion for a directed verdict against the plaintiff if after considering all the evidence and every inference legitimately and reasonably raised thereby most favorably to the plaintiff, the court shall determine that there is not sufficient evidence to find each and every one of the facts required to be proven by the provisions of subparagraph[s] (A) through (E) of the preceding paragraph (ii). . . .

*Id.*

dard of review typically conducted by this Court, in syllabus point three of *Brannon v. Riffle*, 197 W.Va. 97, 475 S.E.2d 97 (1996), we recently held:

> The appellate standard of review for the granting of a motion for a directed verdict pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, this court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a directed verdict when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a directed verdict will be reversed.

*Id.* Thus, in reviewing Appellee's motion for a directed verdict, it is well-established law that this Court must examine the evidence in the light most favorable to Appellants and determine whether they presented sufficient evidence to meet each part of the test set forth in West Virginia Code § 23–4–2(c)(2)(ii)(A)–(E).

### B.

#### *The "Deliberate Intention" Exception*

 Since its beginning in 1913, the West Virginia Workers' Compensation Act has included, in one form or another, a deliberate intention exception to the immunity from suit protection afforded employers under the Act. *Bell v. Vecellio & Grogan, Inc.*, 197 W.Va. 138, 141, 475 S.E.2d 138, 141 (1996); *see generally* W.Va.Code § 23–2–6 (1994) (providing employers with immunity).[9] This deliberate intention exception was statutorily created in West Virginia Code § 23–4–2. In the seminal case of *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978), this Court attempted to clarify the meaning of deliberate intent,[10] by providing in syllabus point one of *Mandolidis*, in part, that an employer would lose workers' compensation protection and be "subject to a common law tort action for damages or for wrongful death where such employer commits an intentional tort or engages in wilful, wanton, and reckless misconduct. . . ." *Id.*[11]

A flurry of controversy surrounded this Court's definition of deliberate intention, resulting in legislative revisions being made to the statute in 1983. *Bell*, 197 W.Va. at 141–42, 475 S.E.2d at 141–42. In revising the statute, the legislature specifically emphasized, in part, that the Workers' Compensation Act is designed "to remove from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee except as herein expressly provided. . . ." W.Va.Code § 23–4–2(c)(1). Thus, the nature of this personal injury action is governed by the statute. In addition, the legislature stated that it was its express intention "to create a legislative standard for loss of . . . [employer] immunity

---

9. In relevant part, West Virginia Code § 23–2–6 provides:

> Any employer subject to this chapter who shall subscribe and pay into the workers' compensation fund the premiums provided by this chapter or who shall elect to make direct payments of compensation as herein provided shall not be liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring, after so subscribing or electing, and during any period in which such employer shall not be in default in the payment of such premiums or direct payments and shall have complied fully with all other provisions of this chapter.

*Id. See also* W.Va.Code § 23–2–6a (1994) (extending immunity to "officers, managers, agents, representatives or employees of contributing employers").

10. *Mandolidis* relied upon the 1969 amendment to West Virginia Code 23–4–2, which stated, in part:

> If injury or death result to any employee from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child or dependent of the employee shall have the privilege to take under this chapter, and shall also have cause of action against the employer, as if this chapter had not been enacted, for any excess of damages over the amount received or receivable under this chapter.

W.Va.Code § 23–4–2 (1970).

11. *Overruling* Syl.Pt. 2, *Eisnaugle v. Booth*, 159 W.Va. 779, 226 S.E.2d 259 (1976); Syl.Pt. 3, *Brewer v. Appalachian Constructors, Inc.*, 135 W.Va. 739, 65 S.E.2d 87 (1951); Syl.Pt. 1, *Allen v. Raleigh–Wyoming Mining Co.*, 117 W.Va. 631, 186 S.E. 612 (1936).

of more narrow application and containing more specific mandatory elements than the common law tort system concept and standard of willful, wanton and reckless misconduct...." *Id.*[12] In an amazing irony, the Legislature in seeking to tighten the claim, actually broadened it. As we commented in *Mayles v. Shoney's, Inc.* :

> Ironically, this is not the sort of case wherein, under all the facts and circumstances, the appellee could probably have prevailed under the extremely narrow concept of deliberate intent enunciated in *Mandolidis.* See [161 W.Va. 695] 246 S.E.2d at 907. The reason the appellee would likely have been unsuccessful under *Mandolidis* is because we do not perceive this as the type of injury "result[ing] from wilful, wanton or reckless misconduct [where] such ... injury [wa]s no longer accidental in any meaningful sense of the word, and [therefore] must be taken as having been inflicted with deliberate intention ..." *Id.* at 914. However, the legislature, in an apparent effort to narrow the parameters of civil liability for employers, has indeed broadened the concept by enactment of the five-part test of W.Va.Code § 23–4–2(c)(2)(ii).

*Mayles v. Shoney's, Inc.,* 185 W.Va. 88, 405 S.E.2d 15 (1990).

West Virginia Code § 23–4–2(c)(2)(i)–(ii), provides:

> (2) The immunity from suit provided under this section and under section six-a [§ 23–2–6a], article two of this chapter, may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention." This requirement may be satisfied only if:

> (i) It is proved that such employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of (A) conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct; or

> (ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:

> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

> (B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

> (C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such

---

**12.** In full, West Virginia Code § 23–4–2(c)(1) provides:

> It is declared that enactment of this chapter and the establishment of the workmen's compensation system in this chapter was and is intended to remove from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee except as herein expressly provided, and to establish a system which compensates even though the injury or death of an employee may be caused by his own fault or the fault of a co-employee; that the immunity established in sections six and six-a [§§ 23–2–6 and 23–2–6a], article two of this chapter, is an essential aspect of this workmen's compensation system;

> that the intent of the legislature in providing immunity from common law suit was and is to protect those so immunized from litigation outside the workmen's compensation system except as herein expressly provided; that, in enacting the immunity provisions of this chapter, the legislature intended to create a legislative standard for loss of that immunity of more narrow application and containing more specific mandatory elements than the common law tort system concept and standard of willful, wanton and reckless misconduct; and that it was and is the legislative intent to promote prompt judicial resolution of the question of whether a suit prosecuted under the asserted authority of this section is or is not prohibited by the immunity granted under this chapter.

employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

*Id.*

In syllabus point one of *Mayles v. Shoney's, Inc.,* 185 W.Va. 88, 405 S.E.2d 15 (1990), this Court recognized that West Virginia Code § 23–4–2(c)(2) "essentially sets forth two separate and distinct methods of proving 'deliberate intention.'" *Id; compare* W.Va.Code § 23–4–2(c)(2)(i), *with* § 23–4–2(c)(2)(ii). In order to establish deliberate intention under the second method, an employee must prove the five factors announced in subsection (c)(2)(ii)(A)–(E). Appellants in the present case maintain that they presented sufficient evidence of deliberate intention for the matter to be presented to the jury. Therefore, Appellants claim the trial court erred when it directed a verdict for Appellee.

On the other hand, Appellee urges this Court to adopt a per se rule that under no circumstance can a criminal act by a third party form the basis of a deliberate intention claim.[13] Specifically, Appellee argues that, because criminal acts are unforeseeable, an employer could never possess "a subjective realization and an appreciation of the existence of ... [a] high degree of risk and the strong probability of serious injury or death...." W.Va.Code § 23–4–2(c)(2)(ii)(B). In addition, Appellee argues that a specific unsafe working condition can never be said to be the proximate cause of an injury or death caused by the criminal acts of a third person. W.Va.Code § 23–4–2(c)(2)(ii)(E). After reviewing the criteria contained in the statute, we can find nothing therein mandating we reach such an unyielding conclusion. Nor does such a contention comport with common sense.

It would be erroneous for this Court to rule out, *carte blanc,* any possibility that an employee could meet the criteria under the statute. Indeed, this Court would be remiss to read into the statutory language an exclusion which simply does not exist, i.e., that an employee cannot under any circumstances assert a deliberate intention claim when injured by the criminal acts of a third party. To do so would improperly intrude into the legislative arena. *See generally State ex rel. Riffle v. Ranson,* 195 W.Va. 121, 126, 464 S.E.2d 763, 768 (1995) (stating that this Court's "duty is to interpret ... [a] statute,

---

**13.** In advancing their position, Appellee relies upon *Stapleton v. Ashland Oil, Inc.,* 774 F.2d 622 (4th Cir.1985). However, we obviously are not bound by that decision. Moreover, we notice that, while the appellate court in *Stapleton* was unable to find sufficient evidence on the record in the case before it to support a deliberate intention claim under *Mandolidis,* it did not say that it is impossible for an employee to maintain a deliberate intention cause of action against an employer for injuries sustained by the criminal acts of a third party. In addition, the events giving rise to *Stapleton* occurred prior to the 1983 amendments to West Virginia Code § 23–4–2, and the court did not apply the five-part test that confronts this Court today. As earlier indicated, the five-part test contained within West Virginia Code § 23–4–2(c)(2)(ii) is more liberal than the test under *Mandolidis. See supra* note 12.

Additionally, Appellee also cites as support *Mitchell v. Lawson Milk Co.,* 40 Ohio St.3d 190, 532 N.E.2d 753 (1988). However, the standard in *Mitchell* is different than the one applied in this State. Thus, it would be a mistake of law to apply the concepts there to the instant case. *Compare Mitchell,* 532 N.E.2d at 756 (stating an employee need show that the employer either "(1) specifically desired to injure the employee[ ] or (2) knew that injury to an employee was *certain or substantially certain* to result from the employer's act and despite this knowledge, still proceeded" (emphasis added; citations omitted)), *with* W.Va.Code § 23–4–2(c)(2)(ii)(B) (providing, in part, an employee need show the employer possessed "a subjective realization and an appreciation of the existence of ... *the strong probability* of serious injury or death ..." (emphasis added)). For similar reasons, we also decline to follow the other cases cited by Appellee that are outside of this jurisdiction.

not to expand or enlarge upon it"); Syl. Pt. 1, *Consumer Advocate Div. of Public Service Com'n of West Virginia v. Public Serv. Com'n of West Virginia*, 182 W.Va. 152, 386 S.E.2d 650 (1989) (providing "[a] statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten").[14]

Moreover, other courts in other contexts have recognized that a claim may be stated against an employer when an employee is injured or killed by a third party's criminal acts, and in so doing have discussed the foreseeability factor. For instance, in *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456 (Tex.1992), a jury awarded a verdict in a wrongful death case in favor of the family and estate of a murdered overnight clerk at an E–Z Mart. *Id.* at 457. The lower appellate court reversed and ruled that E–Z Mart could not be held liable, as a matter of law, for the murder because E–Z Mart's failure to provide adequate security "was not a cause in fact of ... [the employee's] death." *Id.* at 458. The Supreme Court disagreed, finding the family offered some evidence "to support the jury's finding that inadequate employer security was one cause of ... [the victim's] death." *Id.* at 461.[15] Similarly, in *Parham v. Taylor*, 402 So.2d 884 (Ala.1981), although affirming the trial court's entry of summary judgment in favor of the employer under the facts of the case, the Alabama Supreme Court stated that a claim can lie "in the most extreme case where it is clearly shown that the employer in some manner, greatly and unreasonably, increased the risk to the employee without taking reasonable safety precautions." *Id.* at 887. *See also Johnson v. Thoni Oil Magic Benzol Gas Stations, Inc.*, 467 S.W.2d 772, 775 (Ky.1971) (stating "[i]t is conceivable that circumstances could arise under which an employer may become liable for the murder of an employee").[16]

Although West Virginia's statute is unique and we can find no cases which have applied

14. Although we have no cases directly on point in West Virginia in the workers' compensation arena, in the landlord-tenant context we likewise have declined to delineate such a bright-line rule with respect to a landlord's liability for injuries resulting from third party criminal conduct. In *Miller v. Whitworth*, 193 W.Va. 262, 455 S.E.2d 821 (1995), we refused to fashion a per se rule that a landlord can never be held liable for injuries a tenant receives from a third party's criminal activity. Relying upon common law tort principles, we held in syllabus point six, in part, that "a landlord does not have a duty to protect a tenant from the criminal activity of a third party. However, [we said] there are circumstances which may give rise to such a duty, and these circumstances will be determined by this Court on a case-by-case basis." *Id.* In addition, we specifically stated that we would not try to anticipate what circumstances may warrant landlord liability, but we stressed "that the duty can only arise when the landlord could reasonably foresee that his own actions or omissions have unreasonably created or increased the risk of injury from the intentional criminal activity." *Id.* at 267, 455 S.E.2d at 826.

We recognize the "reasonably foreseeable" standard set forth in *Miller* does not apply to the present case. Clearly, the common law doctrine of deliberate intention was abrogated by statute under the Workers' Compensation Act. *See* Syl. Pt. 2, *Bell* (providing "W.Va.Code 23–4–2(c) (1991) represents the wholesale abandonment of the common law tort concept of a deliberate intention cause of action by an employee against an employer, to be replaced by a statutory direct cause of action by an employee against an employer expressed within the workers' compensation system"). Nevertheless, *Miller* demonstrates that this Court cannot use clairvoyant powers to eliminate every conceivable circumstance which could give rise to a cause of action in the future.

15. On appeal, E–Z Mart conceded negligence and foreseeability. Thus, the only issue before the court was causation. *Id.* at 459. On remand from the Texas Supreme Court, the lower appellate court, nevertheless, found the evidence was insufficient to support the jury's verdict. 832 S.W.2d 368, 374 (Tex.App.1992).

16. In *Johnson*, the appellate court reversed the lower court's dismissal of the complaint for failure to state a claim. *Id.* On a subsequent appeal, after the jury returned a verdict in favor of the victim's estate, the court reversed the jury's verdict, finding "the conditions of the employment were not so fraught with danger as to render a crime against the employee a likelihood or a probability" and concluding a directed verdict should have been entered in favor of the employer. *Thoni Oil Magic Benzol Gas Stations, Inc. v. Johnson*, 488 S.W.2d 355, 358 (1972). Nevertheless, the court reiterated that "[w]hen the conditions of employment are such that they invite attack upon employees by creating highly unusual and unreasonable exposure to danger without the employment of reasonable protective measures there is justification for imposing liability upon the employer when injury results." *Id.* at 357.

a statute precisely like ours,[17] the recognition by the preceding courts that such injuries can be foreseeable and that a cause of action may exist under some circumstances is persuasive.[18] Having carefully examined our statute and finding no explicit impediments contained therein, we likewise hold that the fact that an employee suffers injuries as the result of the criminal act of a third party does not itself preclude the assertion of a deliberate intention cause of action against an employer. In order to prevail, however, such employee must meet the five-part test set forth in West Virginia Code § 23–4–2(c)(2)(ii), (1985). Of course, as we stated in syllabus point two of *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991), "[t]o establish 'deliberate intention' in an action under *W.Va.Code*, § 23–4–2(c)(2)(ii) (1983), a plaintiff or cross-claimant must offer evidence to prove each of the five specific statutory requirements." *Id.* Therefore, the next issue for this Court to determine is whether Appellants established sufficient evidence under the five-part test of West Virginia Code § 23–4–2(c)(2)(ii) in order to survive the motion for a directed verdict.

### C.

### *Evidence of Deliberate Intention*

 As previously indicated, there can be no doubt that the legislature intended for meritless actions to be dismissed by the trial courts. *See* W.Va.Code § 23–4–2(c)(2)(iii)(B), *supra* note 8. To avoid having a case dismissed, there must be "sufficient evidence to find each and every one of the facts required to be proven" under the five-part test of West Virginia Code § 23–4–2(c)(2)(ii). As stated in the rule itself, and as otherwise generally provided by this Court, when reviewing a motion for a directed verdict, a court must consider "all the evidence and every inference legitimately and reasonably raised thereby most favorably to the plaintiff...." W.Va.Code § 23–4–2(c)(2)(iii)(B). If, after reviewing the evidence in the light most favorable to the plaintiff, a court finds insufficient evidence to meet each requirement under the five-part test, then the motion for the directed verdict should be sustained. *Id.*; Syl.Pt. 3, *Roberts*. However, this Court will reverse a directed verdict if it is found that "reasonable minds could differ as to the importance and sufficiency of the evidence...." Syl.Pt. 3, in part, *Brannon*. From this vantage, we evaluate the evidence presented by Appellants under each of the five parts of the test set forth in the statute.

Generally, Appellants maintain that there was a total lack of security in the Store and that lack of security resulted in Mrs. Blake's injuries. At trial, Mrs. Blake and two other employees testified that they previously had requested, to no avail, that security measures be taken at the Store.[19] Among other things, Mrs. Blake testified that: (1) there were no limitations on the amount of money she should keep in the cash register; (2) customers could stand directly behind her when she using the cash register; (4) she could not see out any windows when she was standing at

---

**17.** The dissenting opinion may cite many cases from around the country that have disallowed claims of employees for damages resulting from criminal acts, but it will not cite any case for that principle where there is a statute in place which is analogous to ours.

**18.** It is particularly persuasive in light of the fact that the statute adopted by our legislature provides a wide opportunity for the assertion of a deliberate intention claim and certainly a more liberal interpretation of its elements than the *Mandolidis* case enunciated. *See supra* note 13.

**19.** In its brief, Appellee places great emphasis on the specific security devices and equipment either requested or not requested by the employees. Appellee argues that, according to Appel-

lants' own expert, the security devices and equipment suggested by the employees would not have prevented this crime from occurring. Additionally, Appellee argues that the other security devices and equipment (which were identified by Appellants' expert as standard security practices), were never specifically requested by the employees. However, we find Appellee's argument unavailing. The issue before this Court is not whether the employees properly instructed their employer on what would be the best security devices to install in order to prevent crimes from occurring; rather, the issue is whether Appellee "had a subjective realization and an appreciation of the existence of such [a] specific unsafe working condition ...," i.e., a lack of security at the Store. W.Va.Code § 23–4–2(c)(2)(ii)(B).

the cash register[20]; (5) there was no "drop safe" in the Store[21]; (6) the area was not well lit after dark; and (7) she did not recall being instructed by the manager of the Store that she was to hand over the money in the cash register in the event of the robbery.[22]

Appellants also presented evidence from Ira Somerson, an expert witness in the security management consulting business. After opening that the Store was a "convenience store,"[23] Mr. Somerson testified that it is standard security practice in the convenience store industry to have "a cash control or a cash management policy." This policy involves keeping a low amount of money in the cash register, training employees to put excess amounts of money in a drop safe, and advertising a low amount of money is in the cash register and employees cannot access the safe. In addition, Mr. Somerson testified that it is important to keep the cash register visible from the outside (by positioning it in front of a window and having proper lighting so those passing by the store can see it) and to train employees about what to do in case of a robbery. Mr. Somerson also commented that putting a barrier or counter between a cashier and a customer is "so automatic.... that's like cars have wheels."[24]

After reviewing the conditions of the Store, Mr. Somerson stated he *could not find any security safeguards* that would have defended the Store from being robbed. Mr. Somerson further believed the robber "acted in a very deliberate ... manner" and likely thought he could get away with the crime (which obviously the robber did), after looking over the Store the first time he entered. Mr. Somerson testified that the security condition at the Store was the worst he had ever

seen, and he specifically opined: (1) the Store constituted a specific unsafe working condition, (2) the Store presented a high degree of risk and a strong probability of serious injury or death, and (3) Mrs. Blake's injuries were a direct and proximate result of such a specific unsafe working condition. When asked whether he believed Appellee "had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and strong probability of serious injury or death," Mr. Somerson replied yes and said "Mr. Skidmore knew or should have known— absolutely." W.Va.Code § 23-4-2(c)(2)(B).

■ Upon reviewing these facts in the light most favorable to Appellants, we find Appellants set forth sufficient evidence to avoid entry of a directed verdict. Under the first part of the five-part test contained within West Virginia Code § 23-4-2(c)(2)(ii), evidence was presented as to the lack of security at the Store, and Appellants' security expert testified that such lack of security at the Store constituted "a specific unsafe working condition ... which presented a high degree of risk and a strong probability of serious injury or death[.]" *See* W.Va. Code § 23-4-2(c)(2)(ii)(A). Second, Appellants presented testimony from three employees that they alerted Appellee about the need for security at the Store. We recognize that, in order to actually impose liability, it is not sufficient to show an "employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition," but "it must be shown that the employer actually possessed such knowledge." Syl.Pt. 3, in part, *Blevins*

---

20. Apparently, there were no windows in the front or back of the Store or in the wall between the laundromat and the Store. There were some windows on the side of the Store, but they were mostly blocked by coolers.

21. Mrs. Blake explained that a "drop safe" is "a big metal, steel, vault that has a little slash opening to where its big enough to slide money on through. Once it goes down ..., the employees are no longer available to that money."

22. Mrs. Blake testified that she was instructed by a previous employer to cooperate with a robber.

23. Appellee disputes this finding.

24. Appellee objected to the evidence of a barrier or counter being placed in the Store, claiming it was impossible to have one in this Store. The trial court ruled that the jury could consider the testimony in conjunction with Appellee's objection. Mr. Somerson later responded that, in his thirty-five years in security management, it was the first time he ever saw a store without a barrier between the cashier and a customer, and he offered to demonstrate on a chart where one could be placed in the Store.

*v. Beckley Magnetite, Inc.,* 185 W.Va. 633, 408 S.E.2d 385 (1991). However, we find Appellants met this test, at least so far as to avoid a motion for a directed verdict. *See* W.Va.Code § 23–4–2(c)(2)(ii)(B). Third, Appellants introduced evidence of Appellee's failure to meet the minimum security standard practices in the convenience store industry. *See* W.Va.Code § 23–4–2(c)(2)(ii)(C). Fourth, given that we find sufficient evidence was presented as to the subparagraphs (A), (B), and (C) of West Virginia Code § 23–4–2(c)(2)(ii), and that evidence was offered to show Appellee did not take any actions to provide security at the Store, sufficient evidence existed to demonstrate that Appellee, nevertheless, exposed Mrs. Blake "to such specific unsafe working condition intentionally[.]" *See* W.Va.Code § 23–4–2(c)(2)(ii)(D). Fifth, Appellants' expert specifically opined that Mrs. Blake's injuries were "a direct and proximate result of such specific unsafe working condition." *See* W.Va.Code § 23–4–2(c)(2)(ii)(E). Having concluded Appellants produced sufficient evidence to prevent a directed verdict under the five-part test, we determine the trial court erred when it directed a verdict in favor of Appellee.

### III.

### CONCLUSION

Therefore, for the foregoing reasons, we find that an employee who suffers injury as a result of criminal conduct by a third party is not precluded by that fact from asserting a deliberate intention cause of action against an employer pursuant to West Virginia Code § 23–4–2. In addition, we conclude that the trial court erred in directing a verdict in favor of Appellee at the close of Appellants' case-in-chief. Consequently, we reverse the final order of the Circuit Court of Braxton County and remand this case for further proceedings.[25]

Reversed and remanded.

MAYNARD, J., dissents.

---

**25.** Of course, if a second motion for a directed verdict is made upon retrial and the evidence supplied is less than that provided at the first trial, the trial court must evaluate such evidence and determine whether or not entry of the direct-

MAYNARD, Justice, dissenting.

The great white shark named "*Mandolidis*" is alive and well and on the prowl again in the sea of commerce in West Virginia. Just when you thought it was safe to go back in the water! Such is the result of the majority opinions in *Costilow v. Elkay Mining,* 200 W.Va. 131, 488 S.E.2d 406 (1997) and *Blake v. Skidmore,* 201 W.Va. 126, 493 S.E.2d 887 (July 16, 1997).

In *Costilow* I dissent because I believe a reasonable jury could not come close to inferring from the evidence presented below that Elkay had a subjective realization of any unsafe working condition, or that Elkay made a deliberate and conscious management decision to expose Mr. Jett to that condition. While it is generally a judgment call wether or not a set of facts constitutes deliberate intention under W.Va.Code § 23–4–2(c)(2)(ii), the facts presented in this case clearly do not. Obviously, this Court's decision to reverse the granting of summary judgment by the court below is based on its own preferences; the decision has nothing to do with the applicable law found in W.Va. Code § 23–4–2(c)(2)(ii). In short, the Court is determined to utilize its own preferred standard of gross negligence, and not that of deliberate intention as articulated by the Legislature.

The Legislature has made clear the purpose of the Worker's Compensation system clear by declaring:

> the establishment of the worker's compensation system ... is intended to remove from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee except as herein expressly provided ... *the immunity established in sections six and six-a [§§ 23–2–6 and 23–2–6a], article two of this chapter, is an essential*

ed verdict is appropriate. Similarly, even if Appellants on re-trial overcome a motion for a directed verdict, it still will be a jury determination whether they did so sufficiently to ultimately prevail.

*aspect of this worker's compensation system*[.]

W.Va.Code § 23–4–2(c)(1) (Emphasis added). In response to this Court's holding in *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978), the Legislature narrowed the standard of deliberate intention by amending W.Va.Code § 23–4–2 in order to make it more difficult to prove a cause of action under W.Va.Code § 23–4–2.[1] According to W.Va.Code § 23–4–2(e)(1):

[T]he Legislature intended to create a legislative standard for loss of that immunity of more narrow application and containing more specific mandatory elements than the common law tort system concept and standard of willful, wanton and reckless misconduct ... it was and is the legislative intent to promote prompt judicial resolution of the question of whether a suit prosecuted under the asserted authority of this section is or is not prohibited by the immunity granted under this chapter.

Further, W.Va.Code § 23–4–2(c)(2)(iii)(B) states in part:

Notwithstanding any other provision of law or rule to the contrary, and consistent with the legislative findings of intent to promote prompt judicial resolution of issues of immunity from litigation under this chapter, the court shall dismiss the action upon motion for summary judgment if it finds, pursuant to Rule 56 of the Rules of Civil Procedure that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E) of the preceding paragraph (ii) do not exist[.]

In light of the fact that the appellant failed completely to present sufficient evidence with respect to the subjective realization and intentional exposure elements of a deliberate intention action, the circuit court correctly granted summary judgment on behalf of Elkay. In reversing the circuit court, this Court disregards all of the statutory language quoted above.

The facts of this case reveal that Mr. Jett was a competent and knowledgeable employ-ee, and that Elkay allowed him to exercise a great deal of independent judgment regarding his work. Also, it is undisputed that Mr. Jett was not requested by anyone at Elkay to scalp the slope on which the accident occurred, nor did he inform anyone that he was intending to scalp that area.

W.Va.Code § 23–4–2(c)(2)(ii)(B) and (D) clearly mandate that an employer have a subjective realization of the unsafe working condition, and expose an employee to the unsafe working condition intentionally before losing the immunity to suit afforded by the Worker's Compensation system. Further, as stated in Syllabus Point 3 of the majority opinion, the requirement of subjective realization "is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer actually *possessed such knowledge.*" (Citation omitted) (Emphasis added). The majority inexplicably concludes, however, that "under the circumstances of this action, the appellant should be permitted to include, as part of her 'deliberate intention' theory, and argument to a jury that Elkay, through a pattern of acquiescence, failed to account for Jett's safety, in spite of the obvious hazards." Such reasoning ignores the fact that a jury would by much less apt to creatively evade the statutory language than this Court. Such reasoning disregards W.Va.Code § 23–4–2(c)(2)(iii)(B), concerning the appropriateness of summary judgment when the five elements of deliberate intention are not present. Such reasoning frustrates judicial economy by mandating the time and expense of a trial when, plainly, one is not merited.

Similarly, this Court's decision in *Skidmore* guarantees that another meritless action, rightfully dismissed by the circuit court, will now go to trial. I dissent because I believe that the appellants failed to produce sufficient evidence to establish that the appellee acted with deliberate intention to de-

---

1. In *Mayles v. Shoney's, Inc.*, 185 W.Va. 88, 405 S.E.2d 15 (1990), however, this Court commented that the Legislature's effort to narrow the parameters of civil liability in Code 1950, § 23– 4–2(c)(2)(ii) had actually broadened the concept of such liability. I take issue with this characterization because I think the Legislature did, in fact, narrow liability.

feat the appellee's motion for a directed verdict.

A lack of security measures in a convenience store in rural West Virginia, which has the lowest crime rate in the nation, simply does not constitute a specific unsafe working condition with a high degree of risk and a strong probability of serious injury or death. This is especially so in light of the apparent lack of evidence that the convenience store has a history of being robbed. The evidence presented by the appellant below, while not proving deliberate intention, does show two things. First, it shows that the appellee may have violated the standard of care for security measures in the convenience store industry, which might make him guilty of mere negligence. Second, the evidence shows that a plaintiff can get anyone to testify that the five elements constituting deliberate intention is present in any particular set of circumstances. In the majority opinion, the Court manages to take evidence of poor security and turn it into full-blown deliberate intention, and expects that a reasonable jury may be able to do the same. The Court forgets, however, that the average jury may not be as skilled at bootstrapping.

Perhaps the majority here is motivated by the brutal set of facts in this case and disturbed that an innocent pregnant woman could be so victimized by violent crime and not receive compensation. I am likewise troubled and very sympathetic to the sad fact that crimes such as this one happen thousands of times a year and the victims receive no compensation. The old saw that "hard cases make bad law" is still true, and the Court's effort to fit the circumstances of this case into the deliberate intention exception is a perfect example.

I suspect that the majority is also motivated here by its historical antagonism to the immunity provision of the Workers' Compensation Act. This Court, like most other courts, seems to be plagued by the notion that somewhere, someone actually enjoys immunity to tort liability. Nevertheless, this immunity was created by the Legislature and is an integral part of this state's carefully crafted workers' compensation system, therefore, this Court should learn to live with it. Because I believe that in the above-mentioned opinions the Court improperly invokes the deliberate intention exception, I respectfully dissent.