475 S.E.2d 97

Betty A. BRANNON, Executrix of the Estate of John V. Brannon, Robert B. Cleghorn, Jr., Albert Whaley and Betty Brannon, Plaintiffs Below, Appellees,

v.

Kenneth H. RIFFLE and Barbara Cleghorn Riffle, Defendants Below, Appellants.

No. 23179.

Supreme Court of Appeals of West Virginia.

Submitted May 1, 1996.

Decided July 12, 1996.

Jerald E. Jones, West & Jones, Clarksburg, for Appellees.

James A. Varner, Catherine D. Munster, Jeffrey S. Bolyard, McNeer, Highland & McMunn, Clarksburg, for Appellants.

WORKMAN, Justice:

Appellants Kenneth H. Riffle and Barbara Cleghorn Riffle seek the reversal of an adverse directed verdict entered by the Circuit Court of Harrison County. At issue below was the enforcement of three separate buy/sell agreements between Appellants, as purchasers, and Appellees,[1] as sellers, of certain oil and gas leases and a pipeline. After reviewing this matter, we conclude that the entry of a directed verdict was improper due to the existence of genuine issues of material fact. Accordingly, we reverse and remand for further proceedings.

The background to the buy/sell agreements at issue centers on Appellees' leasehold interest in the oil and gas rights on land referred to as the Parker lease and the Eddy lease.[2] In addition, Appellees also acquired certain rights of way and a gathering pipeline connecting the wells on the two leaseholds to a pipeline owned by Union Carbide.[3]

Early in 1990, Appellant Barbara Riffle along with Steven Garvin and Thomas Small formed a corporation called Natural Resource Recovery Systems ("NRRS"). The corporation was created to fund, market, and

1. The Appellees are Betty Brannon, as executrix of the estate of John V. Brannon, Robert B. Cleghorn, Jr., Albert Whaley, and Betty Brannon, individually.

2. The Parker lease involved approximately 350–400 acres and the Eddy lease approximately 100–150 acres. Both properties are situated in Tyler County, West Virginia. Appellees John Brannon and Robert Cleghorn leased the oil and gas rights to both of these properties. Messrs. Brannon and Cleghorn along with Appellee Albert Whaley invested in the purchase and installation of a pipeline necessary to connect the wells on the leased properties to a pipeline owned by Union Carbide.

3. Albert Whaley, John Brannon, and Robert Cleghorn either owned and/or operated the pipeline through a company called WBC Transmission.

develop a new oil and gas lift system developed by Mr. Garvin to boost production from marginal wells. Beginning in June or July of 1990, Appellants began discussing with Appellees the possible purchase of Appellees' interests in the subject oil and gas properties and pipeline. Appellees were aware that Appellants' interest in the purchase stemmed from the fact that the marginal production of the existing wells on the leased property presented a perfect opportunity to test the lift system developed by Mr. Garvin. These discussions were informal and characterized as being between family and friends.[4]

The parties agree that during the course of these discussions Appellees never indicated to Appellants that there were any problems with the leases. An oral agreement to purchase the oil and gas assets from Appellees was reached and subsequently three separate brief writings memorializing the agreement were signed on or about August 14, 1990.[5] The agreements provided that Appellants had six months prior to the time payment was owed to Appellees for the purchase.[6]

Apparently as a result of a title search performed for Appellants in October 1990, they discovered the existence of certain problems with the leases. The primary obstacle resulted from the fact that the Eddy lease had as a requirement to its continuation that either three wells be drilled within a two-year period following Appellees' execution of the lease in 1983 or alternatively, required a payment of liquidated damages. Because only two wells had been drilled during the initial two-year period and because liquidated damages had not been paid, Appellants realized that the lease had possibly expired.[7] When the six month period had passed and payment was due in connection with the buy/sell agreements, Appellants failed to pay Appellees pursuant to the terms of the three agreements.

Appellees filed a civil action in circuit court against Appellants on June 18, 1991, seeking payment according to the terms of the buy/sell agreements plus interest.[8] In their answer to the complaint, Appellants averred that Appellees had substantially misrepresented the assets covered by the three agreements. Additionally, Appellants filed a counterclaim seeking to recover the amounts they expended in connection with "investigat[ing], test[ing] and try[ing] to operate the assets that were to be the subject of the purported agreement."[9]

Following the conclusion of a two-day trial, the circuit court granted a directed verdict[10] in favor of Appellees on the grounds that Appellants were charged with constructive notice of the leases which were on file in the courthouse. Crucial to the trial court's ruling was its finding that Appellants had the opportunity to discover the problems about which they complained by investigating publicly-recorded documents. The order directing a verdict instructs Appellants to remit to Appellees the purchase prices agreed upon pursuant to the buy/sell agreements plus legal interest. Through this appeal, Appellants challenge the correctness of that ruling.

 The standard for granting a directed verdict is well-established: "When the

---

4. Barbara Riffle Cleghorn and Kenneth Riffle are brother and sister.

5. The only reason that three separate documents were drafted was because of the differing combinations of individuals who owned the assets being sold. As an example, Mr. Whaley owned an interest in the pipeline but not the two leases.

6. The record reveals that the delayed payment was necessary because at the time the agreements were signed Appellants could not obtain the funds for the purchase without incurring a substantial penalty.

7. The record suggests that the lease would not have expired as to the two wells that had already been drilled and sub-leased.

8. Appellees sought $32,000 for one of the leases and $43,000 for the other. The third agreement only involved the sum of $10 and it appears from the record that Appellees waived their claim for this sum during the course of the litigation below.

9. The trial court rejected Appellants' counterclaim as a matter of law on the ground that the claim concerned expenses incurred by a corporation not a party to the suit. We find no error in this ruling.

10. The directed verdict was entered following the close of defendants' [Appellants'] evidence.

plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right to recovery, the trial court should direct a verdict in favor of the defendant." Syl. Pt. 3, *Roberts ex rel. Roberts v. Gale,* 149 W.Va. 166, 139 S.E.2d 272 (1964). In syllabus point one of *Jividen v. Legg,* 161 W.Va. 769, 245 S.E.2d 835 (1978), we recognized that

> " 'Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence. Syllabus, *Nichols v. Raleigh–Wyoming Coal Co.,* 112 W.Va. 85[, 163 S.E. 767 (1932) ].' " Point 1, Syllabus, *Jenkins v. Chatterton,* 143 W.Va. 250[, 100 S.E.2d 808](1957).

The appellate standard of review for the granting of a motion for a directed verdict pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, this court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a directed verdict when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a directed verdict will be reversed. The question for us "is not 'whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict....' " *Neely v. Mangum,* 183 W.Va. 393, 395, 396 S.E.2d 160, 162 (1990)(quoting *Littlejohn v. ACF Indus. Corp.* 556 F.Supp. 70, 73 (S.D.W.Va.1982)); *see also Barefoot v. Sundale Nursing Home,* 193 W.Va. 475, 481, 457 S.E.2d 152, 158 n. 6 (noting that standard for granting both judgment notwithstanding the verdict and directed verdict is identical: "after considering the evidence in the light most favorable to the nonmovant only one reasonable verdict is possible").

■ Appellants argue that the lower court's ruling was improper due to the presence of numerous factual issues concerning when Appellees knew of the possible lapsing of the Eddy lease. The circuit court reasoned that even if there had been a mutual mistake of fact with regard to the validity of the Eddy lease, the doctrine of constructive notice precluded any reliance on such mistake. Conversely, Appellants maintain that these factual inquiries are not precluded by the doctrine of constructive notice. We agree.

■ The doctrine of constructive notice places subsequent purchasers on notice of all facts which could be discovered by searching the record of a duly-recorded instrument. Syl. Pt. 2, *Smith v. Owens,* 63 W.Va. 60, 59 S.E. 762 (1907); *see also* W. Va.Code § 40–1–9 (1982); *see generally* 15 Michie's Jurisprudence *Recording Acts* § 15 (West 1979). The circuit court expressly found that

> The law of this State is that a purchaser of real property, which would include the oil and gas leases in question in this case, is charged with constructive knowledge of what the lease document contains even though such purchaser may never have seen it if the document is recorded in the office of the Clerk of the County Commission of the County in which the property is located. Therefore, the defendants were charged with the knowledge that the Eddy lease had expired by its own terms before they entered into the August 14, 1990, agreement to purchase.

The circuit court reasoned further that the

> defendants' [Appellants'] theory of mutual mistake of fact between the parties is not applicable, as a matter of law, as the only possibility of that theory being applicable was the condition or status of the Eddy lease, and ... the defendants were charged with constructive knowledge that the Eddy lease may be forfeited by its terms.

■ In concluding that the doctrine of constructive notice precluded reliance on the defense of mutual mistake, however, the circuit court overlooked the fact that

> it is generally recognized that a mistake as to the legal effect of a contract, though a mistake of law, will be treated as a mistake of material fact where the mistake is mutu-

al, or common to all parties to the transaction, and results in a written instrument which does not embody the "bargained-for" agreement of the parties.

*Webb v. Webb,* 171 W.Va. 614, 619, 301 S.E.2d 570, 575 n. 5 (1983); *see also Robinson v. Shepherd,* 137 Va. 687, 120 S.E. 265, 267 (1923) (holding that where a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, such as a mistake as to his title or interest in real property, and enters into a transaction, the legal scope of which he correctly understands, the mistake is treated as analogous to, if not identical to, a mistake of law); *see generally* 54 Am.Jur.2d *Mistake, Accident, or Suprise* § 10 (1971). The significance of this exception is obvious as a mistake of law does not normally permit the avoidance of an obligation, whereas, "one who enters into a contract or performs some act while laboring under a mistake of material fact is entitled to have the transaction or the act set aside in a court of equity." *Webb,* 171 W.Va. at 616, 301 S.E.2d at 572, syl. pt. 1, in part. Accordingly, if the parties were suffering under a mutual mistake regarding the validity of the Eddy lease at the time they entered into the buy/sell agreements and consequently, the resulting "written instrument . . . does not embody the 'bargained-for' agreement of the parties[,]" the law treats what would otherwise be viewed as a mistake of law as a mistake of fact. *Id.* at 619, 301 S.E.2d at 575, n. 5.

Having reviewed the record in this case, we conclude that there are various legitimate inquiries proper for jury resolution regarding whether both Appellants and Appellees were under the impression, albeit incorrect, that the Eddy lease had not lapsed at the time the buy/sell agreements were signed. As discussed above, the conversion of a mistake of law into a resulting mistake of fact permits a transaction to be set aside. *Id.* at 616, 301 S.E.2d at 572, syl. pt. 1. To be certain, we are not finding the existence of a resultant mistake of law through our ruling. Instead, we are permitting Appellants the opportunity on remand to demonstrate the existence of the necessary factual predicate from which such a jury finding could be made.[11]

Further evidence of the incorrectness of the directed verdict ruling below is contained in the court's order granting such ruling. The court found that "[t]here was no dispute in the evidence that the pipeline which was the subject of a separate agreement dated August 14, 1990, was not turned over to the defendants [Appellants] as represented." It is difficult to conclude that the circuit court properly granted a directed verdict in Appellees' favor while at the same time finding that one of the contractual obligations undertaken by Appellees pursuant to the buy/sell agreements had not been fulfilled. To require Appellants to pay for something that Appellees had clearly failed to transfer both the title to and the right of way documents for appears manifestly unfair.[12] Moreover, this pertains to another one of the defenses raised by Appellants—failure of consideration. Independent of the existence of constructive notice, the defense of failure of consideration would still be relevant.[13]

---

11. The parties concur that there is a recognized exception to the parol evidence rule which permits the introduction of evidence to establish the defense of mutual mistake. *See Cardinal State Bank, Nat'l Ass'n v. Crook,* 184 W.Va. 152, 156, 399 S.E.2d 863, 867 (1990).

12. In addition to Appellees' failure to transfer the necessary documents regarding the pipeline, Appellants aver that Appellees have never made an assignment of the corporate stock or of any of the leases.

13. In fairness to the circuit court, it did rule on the issue of failure of consideration. In its ruling, the court found the existence of "some consideration" "because of its [the Eddy lease] provision that the lessor was required to pay a consideration to the lessee for the personal property used in the wells that were drilled thereon." What the trial court may be referring to as constituting the requisite consideration is the salvage value of the wells located on the Eddy lease property. The record in this case, however, does not indicate whether in fact the wells had any salvage value and thus, we cannot determine whether Appellants did receive anything that would constitute consideration. This unresolved issue regarding the salvage value of the wells on the Eddy lease, combined with the language in the court's order acknowledging the lack of the pipeline transfer, clearly warrant further factual inquiry into the failure of consideration defense.

Another area that Appellants argue the lower court overlooked is the doctrine of constructive fraud.[14] The circuit court satisfied itself that Appellees had not made any intentional misrepresentations to Appellants, but failed to consider the possibility of constructive fraud. *See Stanley v. Sewell Coal Co.,* 169 W.Va. 72, 77, 285 S.E.2d 679, 683 (1981) (defining constructive fraud as conduct the law treats as fraudulent because of resulting consequences and legal effects of actual fraud); *see also* Syl. Pt. 6, *Gall v. Cowell,* 118 W.Va. 263, 190 S.E. 130 (1937)(holding that "[a] representation, untrue in fact, made by one party to a contract, as of his own knowledge, which induces the other party to enter into the contract, whereas, the first party was uninformed as to the truth or falsity of the representation, is fraudulent in equity, even in the absence of actual fraudulent intent"). Appellants contend that the familial nature of the negotiations in combination with the facts of this case suggest constructive fraud. *See Purcell v. Robertson,* 122 W.Va. 287, 292, 8 S.E.2d 881, 883 (1940) (noting that constructive fraud " 'is presumed from the relation of the parties to a transaction or from the circumstances under which it takes place' "). While we make no ruling on the issue of constructive fraud, we do direct the lower court to consider this issue on remand.

Based on the foregoing, the decision of the Circuit Court of Harrison County is hereby reversed and remanded for further proceedings.

Reversed and remanded.

---

**14.** In addition to the defenses of mutual mistake, failure of consideration, and constructive fraud, Appellants also raised commercial frustration and unjust enrichment. Given our ruling in this case, we find it unnecessary to address these additional defenses.