552 S.E.2d 377

**RADEC, INC., Plaintiff Below, Appellee,**

v.

**MOUNTAINEER COAL DEVELOP-MENT COMPANY, d/b/a Marrowbone Development Company, Defendant Below, Appellant.**

No. 27804.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 24, 2000.

Decided Dec. 11, 2000.

Dissenting Opinion of Justice Scott Dec. 13, 2000.

**4**

Richard J. Bolen, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, for appellant.

Robert A. Taylor, Rachael S. Carrico, Masters & Taylor, Charleston, for appellee.

PER CURIAM:

Mountaineer Coal Development Company, d/b/a Marrowbone Development Company (hereinafter referred to as "Marrowbone"), appellant/defendant below, appeals from an adverse jury verdict entered in the Circuit Court of Mingo County. The jury awarded Radec, Inc. (hereinafter referred to as "Radec"), appellee/plaintiff below, $89,629.89 in compensatory damages. Additionally, the jury awarded to Radec $1,541,638.00 in punitive damages. Marrowbone asserts assignments of error related to the following topics: (1) the submission of a fraud theory to the jury; (2) the jury instructions on punitive damages; (3) the trial court's review of the

punitive damage award; (4) the excessiveness of the punitive damages; and (5) the admission of certain evidence regarding finances and the mentioning of a non-union coal operation. Based upon the parties' arguments on appeal, the record designated for appellate review, and the pertinent authorities, we affirm the decision of the Circuit Court of Mingo County.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This case arises from a 1991 written mining contract between Marrowbone and Radec. Under the terms of the contract, Radec agreed to mine coal from two separate mines owned by Marrowbone. The two mines were designated as Radec No. 4 and Radec No. 5. Under the terms of the contract, Radec No. 4 was to be mined first. The mining of Radec No. 5 would not begin until one-and-one-half years later. However, this time frame was extended after Marrowbone requested that Radec mine additional coal reserves adjacent to Radec No. 4. As a result of the additional work, Radec did not complete work at Radec No. 4 until December of 1995, some four years later.

In May of 1995, Radec was prepared to begin mining preparations for Radec No. 5. Due to the unexpected delay in getting to Radec No. 5, a great deal of deterioration had occurred. Approximately twenty-million gallons of water had flooded Radec No. 5, which caused 1,800 feet of the mine's ceiling to fall. The additional cost for rehabilitating Radec No. 5 was not part of the original written contract between Radec and Marrowbone. However, because of Marrowbone's request for additional work on Radec No. 4, and the resulting delay of the start up on of Radec No. 5, Marrowbone orally agreed to reimburse Radec for the cost of rehabilitating Radec No. 5.

Eventually, Marrowbone rejected paying to Radec the amounts requested by Radec for rehabilitating Radec No. 5. Radec then concluded that, as a result of Marrowbone's refusal to pay all of the rehabilitation costs for Radec No. 5, it would no longer be profit-

able for Radec to remove coal from Radec No. 5. Under the terms of the original written contract between Radec and Marrowbone, Radec could terminate its obligation to work Radec No. 5 by providing 30 days notice to Marrowbone. Radec gave no such notice to Marrowbone. Instead, Radec continued to work Radec No. 5 after Marrowbone orally agreed to permit Radec to additionally mine a profitable site known as the Drautz property.

Radec was finishing its work on Radec No. 5 in September of 1996 when Marrowbone advised Radec that Radec would *not* be allowed to mine the Drautz property. Radec subsequently filed this civil lawsuit in July, 1997. The suit alleged causes of action for breach of an oral contract and fraud.[1]

The case was tried before a jury. On June 2, 1999, the jury returned a verdict against Marrowbone in the amount of $89,629.89 as compensatory damages, and $1,541,648.00 as punitive damages. Following the trial court's denial of Marrowbone's post-trial motions, Marrowbone filed this appeal.

## II.

### STANDARD OF REVIEW

We are asked to determine whether the trial court committed error by denying Marrowbones post-trial motion for a new trial. As a general matter, we indicated in Syllabus point 4 of *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976) that "[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." We

have held more specifically regarding appellate review of a motion for a new trial:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). *Accord Lipscomb v. Tucker County Comm'n*, 206 W.Va. 627, 630, 527 S.E.2d 171, 174 (1999); *Coleman v. Sopher*, 201 W.Va. 588, 605, 499 S.E.2d 592, 609 (1997); *Tennant v. Marion Health Care Found.*, 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995). It is based upon these standards that we review this appeal.

## III.

### DISCUSSION

#### A. Fraud Theory

Marrowbone contends that the trial court should not have submitted Radec's fraud theory of liability to the jury. Marrowbone asserts that Radec failed to put forth sufficient evidence of fraud for the jury to consider.[2] We have held that "[t]he essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it." Syl. pt. 1, *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981). *Accord Kessel v. Leavitt*,

---

1. Additional facts of the case are discussed in the body of the opinion.

2. Radec contends that this issue was waived by Marrowbone, because Marrowbone failed to properly move the trial court for judgment as a matter of law at the close Radec's case-in-chief, or at the close of all the evidence. We have recognized that "'[e]ven if a motion for a new trial is made for insufficiency of the evidence, the failure to move for a [judgment as a matter of law] forecloses the question on appeal. A party

may not gamble on the verdict and later question the sufficiency of the evidence.'" *Chambers v. Smith*, 157 W.Va. 77, 80, 198 S.E.2d 806, 809 (1973) (quoting 2B Barron & Holtzoff, *Federal Practice and Procedure* § 1081). We have reviewed the motions made by Marrowbone at the close of Radec's case-in-chief and at the close of all the evidence. We find the motions were adequate to preserve the issue for appellate review.

204 W.Va. 95, 127, 511 S.E.2d 720, 752 (1998); Syl. pt. 2, *Bowling v. Ansted Chrysler–Plymouth–Dodge, Inc.,* 188 W.Va. 468, 425 S.E.2d 144 (1992); Syl. pt. 2, *Muzelak v. King Chevrolet, Inc.,* 179 W.Va. 340, 368 S.E.2d 710 (1988).

■ We have further held that " '[w]hen the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right of recovery, the trial court should direct a verdict in favor of the defendant.' Syl. pt. 3, *Roberts v. Gale,* 149 W.Va. 166, 139 S.E.2d 272 (1964)." Syl. pt 1, *Brannon v. Riffle,* 197 W.Va. 97, 475 S.E.2d 97 (1996). However, it is equally well established that a claim should go to the jury unless manifest insufficiencies in the evidence compel otherwise. Accordingly, it has long been the rule in this jurisdiction that " '[b]efore directing a verdict in a defendant's favor, every reasonable and legitimate inference favorable to the plaintiff fairly arising from the evidence, considered as a whole, should be entertained by the trial court, and those facts should be assumed as true which the jury may properly find under the evidence.' Syl. pt. 1, *Fielder v. Service Cab Co.,* 122 W.Va. 522, 11 S.E.2d 115 (1940)." Syl. pt. 9, *Casto v. Martin,* 159 W.Va. 761, 230 S.E.2d 722 (1976). *Accord* Syl. pt. 1, *Blake v. John Skidmore Truck Stop, Inc.,* 201 W.Va. 126, 493 S.E.2d 887 (1997). In our review of the record, we are left with little doubt that sufficient evidence was adduced by Radec to warrant the fraud claim being submitted to the jury.[3]

■ To begin, a Radec official, Richard Goff, testified that a Marrowbone official, Howard Epperly, promised to let Radec mine the Drautz property if Radec continued to rehabilitate and mine Radec No. 5. Goff further testified that another Marrowbone official, John Faulconer, took Radec officials to see the Drautz property. Mr. Goff clearly testified that Radec would not have continued to rehabilitate and mine Radec No. 5 had

Marrowbone not promised to permit Radec to mine the Drautz property.

The Evidence presented by Radec suggested that it was reasonable for Radec to rely on such a promise, because Radec had done business with Marrowbone for almost twenty years. Moreover, Marrowbone made additional representations to Radec regarding Marrowbone's preparation of the necessary paperwork to secure governmental approval for mining the Drautz property.

In contrast, John Faulconer testified that Marrowbone had never actually considered letting Radec mine the Drautz property.[4] Other evidence suggested that Marrowbone had been considering mining the Drautz property itself. There was also evidence indicating that a mining application for the Drautz property was initially filed under the name of Marrowbone, but was later transferred to that of the Heritage Corporation. The mining application for the Drautz property was never listed in the name of Radec.

To support their damage claim, Radec produced testimony from Mr. Goff, Ms. Kay Parsley, bookkeeper, and Mr. Drew Baldock, accountant. Those witnesses testified that Radec was financially ruined as a result of its reliance on Marrowbone's promise to allow Radec to mine the Drautz property. There was evidence that Radec incurred debts totaling $1.1 million dollars in rehabilitation costs relating to Radec No. 5. Additionally, Radec lost all of its mining equipment due to its inability to make loan payments on the equipment.

It is clear from the above evidence that it was proper to allow Radec's fraud theory to go to the jury. There were "various legitimate inquiries proper for jury resolution regarding [Radec's theory of fraud.]" *Brannon v. Riffle,* 197 W.Va. 97, 101, 475 S.E.2d 97, 101 (1996). This Court has held that "[u]pon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be in-

---

3. Marrowbone contends that, since the jury should not have considered the fraud theory of liability, the trial court committed error by instructing the jury on punitive damages. This issue is without merit insofar as this Court finds

the evidence was sufficient to submit the fraud claim to the jury.

4. Mr. Faulconer's deposition was read to the jury in lieu of live testimony.

dulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence.' Syl., *Nichols v. Raleigh–Wyoming Coal Co.,* 112 W.Va. 85, 163 S.E. 767 (1932)." Syl. pt. 1, *Totten v. Adongay,* 175 W.Va. 634, 337 S.E.2d 2 (1985).

### B. Punitive Damages Instructions

▆▆▆▆ Next, Marrowbone contends that the trial court committed error in failing to fully instruct the jury on punitive damages as provided by our case law. We have held that:

The formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties.

Syl. pt. 6, *Tennant v. Marion Health Care Found., Inc.,* 194 W.Va. 97, 459 S.E.2d 374 (1995).

▆▆▆▆ With respect to instructing the jury on punitive damages, we held in syllabus point 3 of *Garnes v. Fleming Landfill, Inc.,* 186 W.Va. 656, 413 S.E.2d 897 (1991):

When the trial court instructs the jury on punitive damages, the court should, at a minimum, carefully explain the factors to be considered in awarding punitive damages. These factors are as follows:

(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the defendant's actions caused or would likely cause in a similar situation only slight harm, the damages should be relatively small. If the harm is grievous, the damages should be greater.

(2) The jury may consider (although the court need not specifically instruct on each element if doing so would be unfairly prejudicial to the defendant), the reprehensibility of the defendant's conduct. The jury should take into ac-

count how long the defendant continued in his actions, whether he was aware his actions were causing or were likely to cause harm, whether he attempted to conceal or cover up his actions or the harm caused by them, whether/how often the defendant engaged in similar conduct in the past, and whether the defendant made reasonable efforts to make amends by offering a fair and prompt settlement for the actual harm caused once his liability became clear to him.

(3) If the defendant profited from his wrongful conduct, the punitive damages should remove the profit and should be in excess of the profit, so that the award discourages future bad acts by the defendant.

(4) As a matter of fundamental fairness, punitive damages should bear a reasonable relationship to compensatory damages.

(5) The financial position of the defendant is relevant.

▆▆▆▆ The record is clear. The trial court *did not* specifically cite the *Garnes* factors when instructing the jury on punitive damages. Radec contends that this Court should not consider the issue for two reasons. First, Radec argues that Marrowbone did not raise an objection to the trial court regarding the absence of the *Garnes* factors in the jury instructions. Radec points out that Rule 51 of the West Virginia Rules of Civil Procedure provides that "[n]o party may assign as error the giving or the refusal to give an instruction unless the party objects thereto before the arguments to the jury are begun, stating distinctly, as to any given instruction, the matter to which the party objects and the grounds of the party's objection[.]" *Accord* Syl. pt 5, *Page v. Columbia Natural Resources, Inc.,* 198 W.Va. 378, 480 S.E.2d 817 (1996); Syl. pt. 1, *Shia v. Chvasta,* 180 W.Va. 510, 377 S.E.2d 644 (1988).

▆▆▆ Second, Radec points out that it tendered to the trial court an instruction containing the *Garnes* factors. However, Marrowbone objected to the giving of *any*

punitive damages instruction.[5] Radec argues that Marrowbone should now not be allowed to raise the issue as error, because Marrowbone invited the error by objecting to such an instruction being given. Our cases are clear in holding that "[a] litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal." Syl. pt. 1, *Maples v. West Virginia Dep't of Commerce*, 197 W.Va. 318, 475 S.E.2d 410 (1996). "A judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal." Syl. pt. 4, *State v. Johnson*, 197 W.Va. 575, 476 S.E.2d 522 (1996).

■■■ For the reasons provided by Radec and our decisions on invited error, the *Garnes* jury instruction issue will not be addressed by this Court.[6] Moreover, it has been noted that a defendant "'cannot . . . be allowed to alter retroactively [his] trial strategy.'" *McDougal v. McCammon*, 193 W.Va. 229, 239, 455 S.E.2d 788, 798 (1995) (quoting *DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512, 518 (4th Cir.1985)).

### C. Punitive Damage Award

■■■ Marrowbone contends that the trial court failed to conduct a meaningful and adequate review of the punitive damage award as required by our case law. This Court provided guidelines for reviewing a punitive damage award in Syllabus point 4 of *Garnes v. Fleming Landfill, Inc., supra*, as follows:

When the trial court reviews an award of punitive damages, the court should, at a minimum, consider the factors given to the jury as well as the following additional factors:

(1) The costs of the litigation;

(2) Any criminal sanctions imposed on the defendant for his conduct;

(3) Any other civil actions against the same defendant, based on the same conduct; and

(4) The appropriateness of punitive damages to encourage fair and reasonable settlements when a clear wrong has been committed. A factor that may justify punitive damages is the cost of litigation to the plaintiff.

Because not all relevant information is available to the jury, it is likely that in some cases the jury will make an award that is reasonable on the facts as the jury know them, but that will require downward adjustment by the trial court through remittitur because of factors that would be prejudicial to the defendant if admitted at trial, such as criminal sanctions imposed or similar lawsuits pending elsewhere against the defendant. However, at the option of the defendant, or in the sound discretion of the trial court, any of the above factors may also be presented to the jury.

We have reviewed the trial court's order. We disagree with Marrowbone's contention that the order fails to demonstrate a meaningful review. We find the order shows the trial court gave full consideration to the amount of the punitive damage award and the evidence adduced at trial.

### D. Excessive Punitive Damages

■■■ Marrowbone contends that the punitive damage award was grossly excessive. This Court observed in Syllabus point 1 of *Garnes v. Fleming Landfill, Inc.*, in part, that "[p]unitive damages must bear a reasonable relationship to the potential of harm caused by the defendant's actions."[7]

---

**5.** Marrowbone's objection was as follows: "We object. You've covered punitive damages repeatedly in your charge. We've objected to it, but—"

**6.** Marrowbone assets that this error mandates reversal of the trial court based upon the plain error doctrine. We will not invoke the plain error doctrine to examine an error that was not only not objected to, but was actually invited. It was noted in *State v. Knuckles*, 196 W.Va. 416, 421, 473 S.E.2d 131, 136 (1996), that "waiver

necessarily precludes salvage by plain error review." *But see State v. Redden*, 199 W.Va. 660, 487 S.E.2d 318 (1997) (using plain error to address an invited error issue that involved a fundamental right secured by the state and federal constitutions).

**7.** In syllabus point 5 of *Garnes* we held:

Upon petition, this Court will review all punitive damages awards. In our review of the petition, we will consider the same factors that

We elaborated on the issue of the reasonableness of a punitive damage award in syllabus point 15 of *TXO Prod. Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 419 S.E.2d 870 (1992), as follows:

> The outer limit of the ratio of punitive damages to compensatory damages in cases in which the defendant has acted with extreme negligence or wanton disregard but with no actual intention to cause harm and in which compensatory damages are neither negligible nor very large is roughly 5 to 1. However, when the defendant has acted with actual evil intention, much higher ratios are not per se unconstitutional.[8]

(Footnote added).

We have considered the issues raised by the parties as it relates to trial evidence and the punitive damage award in this case. We agree with Radec that the evidence of Marrowbone's fraudulent conduct warranted the amount of punitive damages awarded in this case. It is clear from the evidence that Marrowbone knew Radec could not survive financially if it rehabilitated and mined Radec No. 5. Additionally, Marrowbone plainly knew it would benefit from Radec's work on Radec No. 5. In order to reap this benefit, Marrowbone deceived Radec into believing that it would be given the profitable Drautz property to mine after completing work on Radec No. 5. Marrowbone never intended to turn over the Drautz property to Radec. Marrowbone's actions were "evil" and self-serving.

### E. Admission of Evidence

Marrowbone assigns error to the admission of two types of evidence. With regard to the admission of evidence, we have held that

> The West Virginia Rules of Evidence . . . allocate significant discretion to the trial court in making evidentiary . . . rulings. Thus, rulings on the admission of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary . . . rulings of the circuit court under an abuse of discretion standard.

Syl. pt. 9, *Tudor v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 111, 506 S.E.2d 554 (1997). It has also been made clear by this Court that "[a] judgment will not be reversed because of the admission of improper or irrelevant evidence when it is clear that the verdict of the jury could not have been affected thereby." Syl. pt. 7, *Torrence v. Kusminsky*, 185 W.Va. 734, 408 S.E.2d 684 (1991).

To begin, Marrowbone argues that the trial court committed error in admitting evidence illustrating Marrowbone's financial situation. Marrowbone concedes that under *Garnes v. Fleming Landfill, Inc., supra*, evidence of its financial position is relevant. However, Marrowbone contends that Radec's evidence, showing gross revenues over a six-year period, did not reflect Marrowbone's true financial position.

Radec notes initially that Marrowbone did not object to the evidence on the grounds of accuracy during the trial. Marrowbone sought to keep the evidence out on the ground that it was not relevant. Next, Radec points out that Marrowbone refused to provide more accurate financial information during discovery. Further, the information submitted to the jury actually came from information Marrowbone supplied to Radec.

Insofar as Marrowbone supplied Radec with the financial information introduced at trial, but failed to challenge that information at trial with more accurate data that it possessed, we find no merit to this issue. Marrowbone cannot withhold requested information and then complain about the accuracy of information it supplied. "It is fundamental that a defendant must live by his trial decisions." *State v. Knuckles*, 196 W.Va. 416,

---

we require the jury and trial judge to consider, and all petitions must address each and every factor set forth in Syllabus Points 3 and 4 of this case with particularity, summarizing the evidence presented to the jury on the subject or to the trial court at the post-judgment review stage. Assignments of error related to a factor not specifically addressed in the petition will be deemed waived as a matter of state law.

**8.** Marrowbone points out that the ratio between the punitive and compensatory damages awards is seventeen to one.

421, 473 S.E.2d 131, 136 (1996). *See also McDougal v. McCammon,* 193 W.Va. 229, 238, 455 S.E.2d 788, 797 (1995) ("As a general rule, wrongfully secreting relevant discovery materials makes it inequitable for the withholder to [ob]tain the benefit of a favorable verdict.").

 Marrowbone also assigned error to the admission of evidence regarding the mentioning of a non-union company. Radec contends, and we agree, that this evidence was relevant as corroborative and impeachment evidence.

Radec presented evidence indicating the circumstances surrounding Marrowbone's promise to let Radec mine the Drautz property. Marrowbone's Howard Epperly denied ever promising to let Radec mine the Drautz property. However, evidence presented by Radec revealed that Epperly had stated, before Radec was promised it would mine the Drautz property, that the Drautz property was going to be conveyed to a non-union company. This evidence served to both impeach Epperly and corroborate Radec's rendition of what was promised and said by Marrowbone.[9] "Our prior cases have permitted the attacking party to admit evidence that, if credited by the jury, would raise doubts about a prior witness's testimony." *McDougal v. McCammon,* 193 W.Va. 229, 236, 455 S.E.2d 788, 795.

## IV.

## CONCLUSION

In view of the foregoing, the judgment of the circuit court is affirmed.

Justice SCOTT dissents and files a dissenting opinion.

SCOTT, Justice, dissenting.

---

**9.** Marrowbone also asserted several assignments of error regarding Radec's contract claim, including accord and satisfaction, and a jury instruction on constructive fraud. We need not address these issues insofar as we have found that the fraud theory supported the verdict in this case.

(Filed Dec. 13, 2000)

I respectfully but emphatically dissent from the majority opinion. In conclusory fashion, and with limited evaluation of the issues, the majority affirms the submission of the punitive damages issue to the jury, finds no flaw in the failure to provide the jury with a *Garnes* instruction, and approves the jury's punitive damage award in the ratio of 17:1 to the compensatory award. I differ with the majority on each of these issues and deem the resulting affirmance of a $1.5 million punitive award appalling under the circumstances of this case and destructive of the public reputation of the judicial proceeding.

### I. Submission to the Jury

An initial inquiry is whether the lower court erred in allowing the issue of punitive damages to go to the jury. This Court has explained that a lower court must evaluate the issue of whether a jury can consider an award of punitive damages in light of the following question:

Do the facts and inferences in this case point so strongly and overwhelmingly in favor of the [defendant] to the extent that it did not act so maliciously, oppressively, wantonly, willfully, recklessly, or with criminal indifference to civil obligations that no reasonable jury could ... reach[ ] a verdict against the [defendant] on the issue of punitive damages?

*Alkire v. First Nat. Bank of Parsons,* 197 W.Va. 122, 129, 475 S.E.2d 122, 129 (1996); *see also Haynes v. Rhone–Poulenc, Inc.,* 206 W.Va. 18, 35, 521 S.E.2d 331, 348 (1999). I fail to discern any factual basis to support the determination that the Appellant acted maliciously, oppressively, wantonly, willfully, recklessly, or with criminal indifference to civil obligations that the lower court apparently perceived in the present case.[1]

### II. Failure to Provide *Garnes* Instruction

Assuming for the sake of argument that the punitive damage issue was properly sub-

---

**1.** This "issue of whether there is sufficient evidence to justify an award of punitive damages is a question of the law" for the court. *Marshall v. El Paso Natural Gas Co.,* 874 F.2d 1373, 1384 (10th Cir.1989).

mitted to the jury, such presentation imposed upon the lower court the obligation to accurately and fully instruct the jury with regard to punitive damages. The majority correctly acknowledges that the lower court provided the jury with a punitive damage instruction; however, the majority ends its analysis too quickly, failing to recognize that the lower court told the jury only half the story.[2] The general punitives instruction was given, but the *Garnes* enunciation of factors to be utilized in determining an appropriate amount of damages was not provided. Thus, the jury was left with a standardless punitive damage instruction, failing to provide a framework for the punitive damages determination and omitting even the most basic tenet that, "[a]s a matter of fundamental fairness, punitive damages should bear a reasonable relationship to compensatory damages." *Garnes*, 186 W.Va. at 658, 413 S.E.2d at 899, syl. pt. 3, in part. The lower court painted only a portion of the whole portrait. Its limited recitation of the law on punitives did not adequately reflect West Virginia law or properly guide the jury in its determination of punitives.

The *Garnes* factors are not so easily disregarded. Based upon the United States Supreme Court's decision in *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), establishing due process standards for punitive damage awards,[3] the *Garnes* decision establishes a process for awarding and reviewing a punitive damages issue: "Under our system for an award and review of punitive damages awards, there must be: (1) a reasonable constraint on jury discretion. . . ." 186 W.Va. at 658, 413 S.E.2d at 899, syl. pt. 2, in part. There was no reasonable constraint in this case; in fact, there was no constraint at all.

*Garnes* also provided the following guidance regarding the jury instructions at syllabus point three, as follows:

When the trial court instructs the jury on punitive damages, the court should, at a minimum, carefully explain the factors to be considered in awarding punitive damages. These factors are as follows:

(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the defendant's actions caused or would likely cause in a similar situation only slight harm, the damages should be relatively small. If the harm is grievous, the damages should be greater.

(2) The jury may consider (although the court need not specifically instruct on each element if doing so would be unfairly prejudicial to the defendant), the reprehensibility of the defendant's conduct. The jury should take into account how long the defendant continued in his actions, whether he was aware his actions were causing or were likely to cause harm, whether he attempted to conceal or cover up his actions or the harm caused by them, whether/how often the defendant engaged in similar conduct in the past, and whether the defendant made reasonable efforts to make amends by offering a fair and prompt settlement for the actual harm caused once his liability became clear to him.

(3) If the defendant profited from his wrongful conduct, the punitive damages should remove the profit and should be in excess of the profit, so that the award discourages future bad acts by the defendant.

(4) As a matter of fundamental fairness, punitive damages should bear a reasonable relationship to compensatory damages.

---

**2.** The lower court, in its final order, admitted that the *Garnes* instruction should have been given: "The court agrees with defendant that the *Garnes* instruction should have been given to the jury in this case. However, the court finds that the failure of giving the instruction did not lead to plain error with an outrageous result."

**3.** This Court observed in *Garnes* that the United States Supreme Court in *Haslip* "attempted to establish criteria for determining whether a particular punitive damages award is outside legitimate due process boundaries." 186 W.Va. at 660, 413 S.E.2d at 901.

(5) The financial position of the defendant is relevant.

Id. at 658–59, 413 S.E.2d at 899–900.

The Appellant objected to providing the jury with punitive damage instructions, including the *Garnes* instruction, presumably as part of a trial strategy to limit emphasis upon the jury's opportunity to award punitives. No objection was raised to the failure of the lower court to give the instruction. While I am committed to the concept that a litigant should not be permitted to slumber on his rights or invite an error, I am equally committed to the fundamental right to a fair trial, necessitating clear and complete jury instructions. This Court has invoked the plain error doctrine to correct egregious errors denying the litigants the right to a fair trial, even where no objection was raised to the error below. As we stated in syllabus point one of *Shia v. Chvasta*, 180 W.Va. 510, 377 S.E.2d 644 (1988),

> "No party may assign as error the giving or the refusal to give an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly, as to any given instruction, the matter to which he objects and the grounds of his objection; but the court or any appellate court, may, in the interest of justice, notice plain error in the giving or refusal to give an instruction, whether or not it has been made subject of an objection." Rule 51, in part, *W.Va.RCP.*

Of course, not all instructional errors warrant intervention by means of the plain error doctrine. " 'Where an objection is made to an instruction for the first time on appeal and such instruction is not so deficient so as to require invocation of the "plain error" rule, in consonance with Rule 51, W.Va. R.C.P., this Court will not consider the late objection.' Syl. Pt. 1, *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974)." Syl. Pt. 1, *Muzelak v. King Chevrolet, Inc.*, 179 W.Va. 340, 368 S.E.2d 710 (1988).

I believe that the omission of the *Garnes* instruction created a constitutionally defective jury charge which denied due process and which warrants intercession through the plain error doctrine. "Alleged errors of a constitutional magnitude will generally trigger a review by this Court under the plain error doctrine." *State v. Salmons*, 203 W.Va. 561, 571, 509 S.E.2d 842, 852, n. 13. In syllabus point seven of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), this Court stated: "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings."

### III.   Excessiveness

The majority excuses this error of constitutional magnitude and proceeds to summarily dismiss the Appellant's contention that the punitive damage award was excessive. The excessiveness was, in all likelihood, a direct result of the failure of the lower court to provide the jury with the proper guidelines for the award of punitives, as contained in the omitted *Garnes* instruction. The majority once again launches its examination properly but ultimately falls short of a complete analysis. Indeed, as the majority cites, syllabus point fifteen of *TXO Production Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 419 S.E.2d 870 (1992), provides the proper origin for our inquiry, as follows:

> The outer limit of the ratio of punitives to compensatory damages in cases in which the defendant has acted with extreme negligence or wanton disregard but with no actual intention to cause harm and in which compensatory damages are neither negligible nor very large is roughly 5 to 1. However, when the defendant has acted with actual evil intention, much higher ratios are not per se unconstitutional.

This Court's guidelines in *Garnes* impose an obligation upon the trial court to conduct a review of the punitive damages award. Syllabus point four provides:

> When the trial court reviews an award of punitive damages, the court should, at a minimum, consider the factors given to the jury as well as the following additional factors:
>
> (1) The costs of the litigation;
>
> (2) Any criminal sanctions imposed on the defendant for his conduct;

(3) Any other civil actions against the same defendant, based on the same conduct; and

(4) The appropriateness of punitive damages to encourage fair and reasonable settlements when a clear wrong has been committed. A factor that may justify punitive damages is the cost of litigation to the plaintiff.

Because not all relevant information is available to the jury, it is likely that in some cases the jury will make an award that is reasonable on the facts as the jury know them, but that will require downward adjustment by the trial court through remittitur because of factors that would be prejudicial to the defendant if admitted at trial, such as criminal sanctions imposed or similar lawsuits pending elsewhere against the defendant. However, at the option of the defendant, or in the sound discretion of the trial court, any of the above factors may also be presented to the jury.

186 W.Va. at 659, 413 S.E.2d at 900, syl. pt. 4.

In *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), the United States Supreme Court explained that the trial courts, in scrutinizing the constitutionality of a punitive damage award, must review the ratio of the punitive damage award as compared to the actual harm to the plaintiff as reflected in the compensatory damage award. *Id.* at 582, 116 S.Ct. 1589. A high ratio may be justifiable where a defendant's acts are particularly egregious, as determined in *Parrott v. Carr Chevrolet, Inc.*, 156 Or.App. 257, 965 P.2d 440 (1998), *rev. allowed*, 328 Or. 418, 987 P.2d 511 (1999), concluding that repeated trade practices supported a $300,000 punitives award with only $11,000 in compensatory damages. Where there is no evidence of particularly egregious or evil behavior, however, there is simply no justification for a high ratio. *See Jensen v. Medley*, 170 Or.App. 42, 11 P.3d 678, 689 (2000) (reducing punitive award where "[t]he ratio of punitive damages to noneconomic damages in this case is about 35:1; no special circumstances are present in this case that justify an exceptionally high ratio of punitive damages in relation to compensatory damages").

The evaluation of the punitive damage award does not end at the trial court level. This Court is also obligated to conduct an evaluation, as explained in syllabus point five of *Garnes*:

Upon petition, this Court will review all punitive damages awards. In our review of the petition, we will consider the same factors that we require the jury and trial judge to consider, and all petitions must address each and every factor set forth in Syllabus Points 3 and 4 of this case with particularity, summarizing the evidence presented to the jury on the subject or to the trial court at the post-judgment review stage. Assignments of error related to a factor not specifically addressed in the petition will be deemed waived as a matter of state law.

186 W.Va. at 659, 413 S.E.2d at 900, syl. pt. 5. Had the majority of this Court engaged in a thorough and exhaustive review of all aspects of this punitive damage award, as required by *Garnes*, I cannot fathom how it could have justified its decision to affirm. Where is any evidence which would justify any reasonable jury to find "actual evil intention" on the part of Marrowbone? 187 W.Va. at 461, 419 S.E.2d at 874, syl. pt. 15, in part. I cannot find any. I would reverse, based upon the absence of the *Garnes* instruction, and hold that an instruction on punitive damages which does not include the *Garnes* factors in *per se* reversible. It is the obligation of the court, regardless of the requests or objections of counsel, to ensure that the constitutional mandate of due process inherent in any award of punitive damages be protected. Thus, I dissent.