# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Robin W. Hammer,**
**Plaintiff Below, Petitioner**

**FILED**

**February 26, 2016**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 14-0995** (Randolph County 12-C-169/13-C-18)

**Robert B. Hammer, Sharon M. Helms,**
**and Thomas M. Hammer,**
**Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner Robin W. Hammer, pro se, appeals the Circuit Court of Randolph County's "Order Denying Plaintiff's Motion for a New Trial," entered on August 29, 2014. Respondents Robert B. Hammer, Sharon M. Helms, and Thomas M. Hammer, by counsel Phil Isner, filed a response. Petitioner filed a reply. On appeal, petitioner challenges the circuit court's order that granted judgment as a matter of law in favor of respondents and dismissed all but one of petitioner's claims at the close of petitioner's case-in-chief. Petitioner also challenges the circuit court's decision to sustain respondent's objection to the production of certain documents in discovery.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual Background

The parties are the adult children of Guy S. Hammer, Sr., and Ethel Marie Hammer. This appeal concerns two civil suits that petitioner has filed against three of his siblings related to their parents' estates.[1] The present matter relates to the estate of Ethel Marie Hammer, who died on September 10, 2011. The matter originated from petitioner's complaint filed on October 22,

---

[1] This is the third time that the parties' disputes related to their parents' estates have reach this Court. The first case, *Hammer v. Hammer,* No. 11-0075, 2012 WL 3002534 (W.Va. May 9, 2012) (memorandum decision), involved the validity of a 2008 power of attorney executed by Ethel Marie Hammer. In the second case, *Guy S. Hammer II and Robin W. Hammer v. Thomas M. Hammer and Sharon Helms,* No. 12-1476, 2013 WL 5788568 (W.Va. Oct. 28, 2013) (memorandum decision), we affirmed the adoption of the Special Fiduciary Commissioner's ruling with respect to the probate of petitioner's father's estate.

1

2012, Civil Action No. 12-C-169, which he amended on or about February 12, 2013. Additionally, petitioner filed a separate complaint on January 16, 2013, Civil Action No. 13-C-8. The circuit court consolidated the two cases into one proceeding.

Petitioner's allegations included, generally, the following: breach of express or implied contract related to respondents' failure to convey certain real property, known as the Currence Property, to him; civil conspiracy related to the sale of the Currence Property, in which petitioner had an interest, in order to fund the care of the decedent from May 2011 until her death; unjust enrichment; intentional infliction of emotional distress; fraud relating to the promise that petitioner would be compensated for caring for the decedent; and wasting of the decedent's estate due to respondents' refusal to rent certain apartments owned by decedent.

The case proceeded to a seven-day jury trial in April of 2014. At the close of petitioner's evidence, respondents moved for judgment as a matter of law on all counts, except for the one count alleging fraud. The circuit court granted respondents' motion, and the trial continued on the fraud count, which was submitted to the jury. The jury returned a verdict in respondents' favor.[2] Petitioner moved for a new trial, which the court denied by order entered on August 29, 2014, and this appeal followed. We will address salient facts in our discussion of petitioner's alleged errors.

**Discussion**

On appeal, petitioner raises the following assignments of error:

(1) The circuit court erred in dismissing the breach of contract claim as a matter of law by finding that the plaintiff refused to accept the June 12, 2009, offer for the transfer of property and that it didn't matter whether he had a good reason, a bad reason, or no reason at all to reject the offer; (2) The circuit court erred in dismissing the civil conspiracy claim and wasting of the estate claim by finding that $8,100 paid in legal fees from the Ethel Hammer estate checking account was either a lawful debt owed by the decedent or a lawsuit that could be defended because it would affect the estate; (3) The circuit court erred in sustaining objections to the production of documents referred to as billing information concerning legal services provided by attorney David Wilmoth; (4) The circuit court erred in dismissing claims of civil conspiracy and wasting of the estate by the co-executors due to their refusal to rent and maintain the apartments in two apartment buildings by finding as fact that the estate had cash flow problems in early 2012 and therefore could not upgrade and rent the apartments. This finding infers that none of the apartments in both buildings could be rented due to their condition, which is a finding that the jury should have made, not the court; and (5) The court erred in dismissing the intentional infliction of emotional distress claim in its application of the law to the facts in this case.

---

[2] On appeal, petitioner does not challenge the jury's verdict with respect to the fraud count.

2

With the exception of his third assignment of error, which we will address last, petitioner challenges the circuit court's pre-verdict granting of judgment as a matter of law in favor of respondents on all but one of petitioner's claims. With respect to these alleged errors, we apply the following standard of review:

> The appellate standard of review for the granting of a motion for a directed verdict pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, this court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a directed verdict when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a directed verdict will be reversed.

Syl. Pt. 3, *Brannon v. Riffle*, 197 W.Va. 97, 475 S.E.2d 97 (1996). "When the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right to recovery, the trial court should direct a verdict in favor of the defendant." Syl. Pt. 1, *id.* (citing Syl. Pt. 3, *Roberts ex rel. Roberts v. Gale,* 149 W.Va. 166, 139 S.E.2d 272 (1964)).[3]

With this standard in mind, we turn to petitioner's first argument, in which he contends that the circuit court erred by dismissing his breach of contract claim. Petitioner claims that on or around June 12, 2009, respondents offered to convey the Currence Property to him. Petitioner further claims that he accepted this offer by performing a certain condition precedent, namely, vacating his belongings from his mother's residence. Petitioner claims that respondents breached this contract because Respondent Robert Hammer -- who had previously served as the decedent's power of attorney -- resigned that responsibility around October 16, 2009, and refused to convey the property to petitioner. Essentially, petitioner argues that he acted in reliance on respondents' offer, and thus, their failure to convey the Currence Property to him constitutes a breach of contract.

However, as the evidence revealed at trial, and respondents argue now, there never was an enforceable contract for the sale of the Currence Property to petitioner. The record in the present case demonstrates the terms of the prospective transaction were never finalized. Apparently, the parties were considering allowing petitioner to apply the value of his services in caring for the decedent toward the purchase of the property. However, it does not appear that the parties reached an agreement as to the specific amount that would be applied. Additionally, questions arose as to Respondent Robert Hammer serving as the decedent's power of attorney, which apparently resulted in his resignation of that responsibility. Petitioner makes clear to this Court that he refused to accept a deed signed by the decedent because he believed her to be incompetent. Upon our review, we believe that the circuit court correctly found that, while there may have been an offer to convey the property, that offer was never accepted, and thus, there was never an enforceable contract concerning the Currence Property.

---

[3] We note that subsequent to 1998, the term "directed verdict" has been replaced by "judgment as a matter of law."

Petitioner's second and fourth assignments of error -- that the circuit court erred in dismissing his civil conspiracy and wasting of the estate claims -- can be addressed together. Petitioner made two wasting claims. The first claim related to respondents' payment of legal fees to attorney David Wilmoth in the amount of $8,100.00, and the second claim related to respondents' refusal to rent certain apartments owned by the decedent. Petitioner alleged that Respondents Sharon Helms and Thomas Hammer conspired to waste their mother's estate.

Petitioner states that Mr. Wilmoth represented Respondent Sharon Helms and Respondent Thomas Hammer in 2009 and filed an objection to Respondent Robert Hammer being named power of attorney in 2008. Petitioner further states that, in 2010, Mr. Wilmoth represented Respondent Helms and Respondent Thomas Hammer in their capacities as administrators of their father's estate, to which their mother Ethel Hammer was the sole beneficiary. Petitioner states that Mr. Wilmoth took money from the estate in that litigation even though he did not represent Ethel Hammer. Petitioner contended at trial that the only services provided by Mr. Wilmoth for Respondent Helms and Respondent Thomas Hammer concerning their mother's estate (the present case) was to attend a Randolph County Commission meeting in 2011 concerning their appointment as co-executors and drafting a motion in 2012. Petitioner argued that neither service warranted $8,100.00 in fees.

Regarding respondents' refusal to rent the decedent's apartments during her lifetime, petitioner contended that it was an attempt by Respondent Helms and Respondent Thomas Hammer to defraud Medicaid. Specifically, petitioner alleged that the refusal to rent the apartments was to ensure that decedent had no income. However, petitioner argued that, once the decedent died, Medicaid eligibility was of no concern and the failure to rent her apartments constitutes wasting of the estate.

Upon our review of the record in this matter, we agree that respondents were entitled to judgment as a matter of law with respect to petitioner's civil conspiracy and wasting of the estate claims. West Virginia Code § 44-1-15 provides that "[i]t shall be the duty of every personal representative to administer well and truly the whole personal estate of his decedent. The appointment of a debtor as executor shall not extinguish the debt." The law permits a suit against personal representatives for damage to the estate for which they are responsible. *See* W.Va. Code §§ 44-1-23 and 24. This Court has held that

> [t]he personal representative of the estate of a deceased acts in a fiduciary capacity. His duty is to manage the estate under his control to the advantage of those interested in it and to act on their behalf. In the discharge of this duty, the executor or administrator of a deceased's estate is held to the highest degree of good faith and is required to exercise the ordinary care and reasonable diligence which prudent persons ordinarily exercise, under like circumstances, in their own personal affairs.

Syl. Pt. 1, *Latimer v. Mechling*, 171 W.Va. 729, 301 S.E.2d 819 (1983). A civil conspiracy is described as follows:

4

> A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff.

> A civil conspiracy is not a *per se,* stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s).

Syl. Pts. 8 and 9, *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009). Accordingly, if the wasting of the estate claim fails, the civil conspiracy claim cannot survive. *See Id.*

Regarding the payment of legal fees to Mr. Wilmoth, petitioner failed at trial, and fails now on appeal, to establish that any of the $8,100.00 went beyond the scope of the litigation that affected the estate. Petitioner's brief is replete with assumptions with no support. The fact that Mr. Wilmoth received payment after the decedent died is probative of nothing. Petitioner failed to draw a nexus between the payment to Wilmoth and any improper purpose.

Regarding the apartments, the evidence was that there had been a decision to evict tenants from the apartments sometime around June of 2011, several months prior to the decedent's death. In fact, petitioner's allegations regarding the apartments primarily concerned conduct prior to his mother's death. Petitioner failed to present evidence that respondents wasted the estate subsequent to the decedent's death. The decedent's will does not direct that the apartments be rented; the only arguably relevant provision in her will provided that, if they were rented, the person who oversaw the property would receive a portion of the rental proceeds. As the circuit court found, there was no evidence that respondents violated any duty by failing to rent the apartments after the decedent's death. Therefore, we reject petitioner's second and fourth assignments of error.

Next, petitioner argues in his fifth assignment of error that the circuit court erred in dismissing his intentional infliction of emotional distress claim. It appears that petitioner's claim of "extreme and outrageous conduct" by respondents is based on the allegation that "Petitioner is a hoarder which is a mental disorder and the Respondents in this case knew it."

The cause of action for intentional infliction of emotional distress is defined as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Syl. Pt. 6, *Harless v. First Nat. Bank in Fairmont*, 169 W.Va. 673, 289 S.E.2d 692 (1982). Other than pointing to his own alleged infirmity, petitioner identified no facts at trial that were sufficient to submit his intentional infliction of emotional distress claim to the jury. Even viewing the evidence in the light most favorable to petitioner, the circuit court was correct to grant judgment as a matter of law for respondents on this claim.

Finally, we turn to petitioner's argument that the circuit court erred in sustaining respondents' objection to producing privileged documents. In discovery, petitioner sought documents related to Mr. Wilmoth's representation of respondents. Respondents refused petitioner's request on the basis of the attorney-client privilege. We review petitioner's assignment of error under the following standard:

> A trial court is permitted broad discretion in the control and management of discovery, and it is only for an abuse of discretion amounting to an injustice that we will interfere with the exercise of that discretion. A trial court abuses its discretion when its rulings on discovery motions are clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock our sense of justice and to indicate a lack of careful consideration.

Syl. Pt. 1, *B.F. Specialty Co. v. Charles M. Sledd Co.*, 197 W.Va. 463, 475 S.E.2d 555 (1996). Furthermore, with respect to discovery rulings dealing with privileged information, we have held that "[u]nless obviously correct or unreviewably discretionary, rulings requiring attorneys to turn over documents that are presumably prepared for their clients' information and future action are presumptively erroneous." Syl. Pt. 6, *State ex rel. U.S. Fid. & Guar. Co. v. Canady*, 194 W.Va. 431, 460 S.E.2d 677 (1995).

In the present case, petitioner does not genuinely dispute that the information he sought was privileged; rather, he complains that the circuit court granted respondents' objection to disclosure when the objection was not made until three months after petitioner made the request, and thus, the circuit court should have deemed the objection waived. However, as respondents point out, the circuit court made a factual finding that respondents' discovery responses and objections were timely under the court's order. Under these circumstances, we cannot find that the circuit court abused its discretion in sustaining respondents' objection to disclosure of Mr. Wilmoth's records.

For the foregoing reasons, we affirm the circuit court's August 29, 2014, order denying petitioner's motion for a new trial.

Affirmed.

**ISSUED:** February 26, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II